F. Paul DUFFY and Virginia H. Duffy, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 72–2050.

United States Court of Appeals, Sixth Circuit.

Argued April 11, 1973.

Decided Nov. 16, 1973.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, Jane M. Edmisten, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief, for defendant-appellant; William W. Milligan, U. S. Atty., Byron E. Trapp, Asst. U. S. Atty., Cincinnati, Ohio, of counsel.

Frank J. Richter, Richter & Dewan, Cincinnati, Ohio, on brief, for plaintiffs-appellees.

Before McCREE and KENT,* Circuit Judges, and CECIL, Senior Circuit Judge.

McCREE, Circuit Judge.

The government appeals from a judgment for taxpayers in an action to recover income taxes paid upon assessment of a deficiency by the Internal Revenue Service for the calendar years 1963 to 1966. The facts were stipulated and the case was submitted on cross-motions for summary judgment. The district court's opinion is reported at 343 F.Supp. 4 (S. D.Ohio 1972).

The taxpayers, F. Paul Duffy, a physician, and his wife, Virginia H. Duffy, purchased improved real estate in Cincinnati, Ohio on July 31, 1962, for use by Dr. Duffy in his medical practice. Shortly thereafter, on February 26, 1963, the Duffys executed a trust agreement [1] pursuant to which they conveyed this property to the Provident Bank as trustee. On the same day, the Duffys and the bank executed a five year lease-back agreement, renewable for an additional five years, in which Dr. Duffy agreed to pay an annual rent of $8,650, an amount stipulated as reasonable.

The trust agreement created four trusts, one for the benefit of each of their children: James, born on May 30, 1945; Timothy, born on November 23, 1948; Julia, born on August 7, 1951; and Eileen, born on November 8, 1956. These trusts were made irrevocable for 10 years and 30 days and amendable and revocable thereafter. The trust instrument provides that a beneficiary, while a minor, may receive, if necessary in the sole discretion of the trustee, his share of the trust principal or the income generated by it for his education, maintenance or welfare. Income not distributed for these purposes is to be accumulated by the trustee. When each child reaches his majority, his share of the accumulated and unexpended trust income is to be made part of the trust corpus.[2] However, his share of the

---

* Judge Kent died on May 27, 1973 and did not participate in this decision.

1. The trust in this case is similar to a "Clifford" trust, a designation derived from the United States Supreme Court's decision in Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788 (1940). In that case, the grantor acted as trustee of a trust, created for the benefit of his wife. The present sections of the Internal Revenue Code, 26 U.S.C. §§ 671–78 (1967) were enacted to overcome the problems and to close the loopholes in the 1939 Code. A basic concern addressed by both the old and new trust taxation provisions is the ability of one taxable unit, for example, a family, to multiply itself into several taxable units by the creation of trusts.

2. The district court apparently misunderstood the provisions of the trust instrument. Thus, the court stated, in distinguishing Humphrey v. C. I. R., 39 T.C. 199 (1962), that "[t]he clear language and intent of section 2 of the trust agreement is for the *trustee* to accumulate the income of the trust for the benefit of the *beneficiaries* and to distribute such accumulated income to the *beneficiaries* upon their reaching a certain age." Duffy v. United States, 343 F.Supp. 4, 8 (1972). If the trust instrument had

trust income accruing thereafter must be distributed to him. Moreover, unless the trust is revoked or amended as it may be after 10 years and 30 days, the principal and the income accumulated during the minority of each child will be distributed among the beneficiaries when the youngest becomes 25. No beneficiary has ever received any income during his minority. However, on May 30, 1966, James, the eldest Duffy child, became 21 and began receiving the income thereafter accruing to his trust.

During the tax years 1963 through 1966, taxpayers did not include in their income the taxable income received by the trust from the rental of the property to Dr. Duffy. Moreover, during the same period of time, taxpayers deducted as an ordinary and necessary business expense the rent paid by Dr. Duffy to the trust.

Pursuant to an audit of taxpayers' joint returns for the tax years 1963, 1964, 1965, and 1966, the Internal Revenue Service (IRS) concluded that either the taxable income of the trust should have been included in taxpayers' income for these years or alternatively, that the rent paid by Dr. Duffy, less the depreciation allowance for the building was not an ordinary and necessary business expense. Deficiencies of tax and interest were therefore assessed.

After paying the assessed deficiencies, taxpayers filed a claim for refund for each year involved. The District Director disallowed their claims for 1963, 1964 and 1966 but, possibly because of an oversight, allowed their claim for 1965.

Taxpayers then filed a suit in United States District Court. The district court found that the taxable trust income for the years in question was not includible in taxpayers' income and that the rent paid by Dr. Duffy was an ordinary and necessary business expense. The court, therefore, granted the tax-

payers recovery of assessed income taxes and interest for 1963, 1964 and 1966, in the amount of $14,965.25 plus accumulated interest. Duffy v. United States, 343 F.Supp. 4 (S.D.Ohio 1972).

In this appeal the government argues that either the district court erred in holding that the bank is an "adverse party" as defined by section 672(a) of the Internal Revenue Code, 26 U.S.C. § 672(a) (1967) and that therefore the Duffys should have included in their income the taxable trust income under section 677(a)(2) of the Internal Revenue Code, 26 U.S.C. § 677(a)(2) (1967) or that the district court erred in holding that the Duffys were entitled to deduct the rent paid for Dr. Duffy's office as an ordinary and necessary business expense under section 162 of the Code, 26 U.S.C. 162 (1967). Taxpayers argue, however, that because the trust comes within the excepting clause of section 677, there is no need to consider whether the bank is an "adverse party" and that the district court was correct in holding that the rent payments were ordinary and necessary business expenses.

■ We hold that the taxable income of the trust should have been included in the taxpayers' income under section 677(a)(2) of the Internal Revenue Code. Accordingly, we do not reach the government's alternative assignment of error.

Section 677(a)(2) of the Internal Revenue Code, Income for benefit of grantor, 26 U.S.C. § 677(a)(2) (1967), provides in relevant part:

(a) General rule. The grantor shall be treated as the owner of any portion of a trust . . . whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be . . .

(2) held or accumulated for future distribution to the grantor . . . .

provided that all accumulated income must be distributed to the beneficiaries, the trust

income would not have been includible in the taxpayers' income.

This provision is followed immediately by an "excepting" clause which provides that

[t]his subsection shall not apply to a power the exercise of which can only affect the beneficial enjoyment of the income for a period commencing after the expiration of a period such that the grantor would not be treated as the owner under section 673 if the power were a reversionary interest; but the grantor may be treated as the owner after the expiration of the period unless the power is relinquished.

This section is dispositive of the issues in this case: first, whether the taxpayers are exempt from the application of the general rule of the section by virtue of the excepting clause, and second, if the taxpayers do not come within the excepting clause, whether the institutional trustee is an "adverse party" within the meaning of the general rule. We hold that the taxpayers cannot avail themselves of the excepting clause and that the Provident Bank is not an adverse party.

To come within the excepting clause, taxpayers argue, they need only show that they had no power during the initial ten years of the trusts to control the beneficial enjoyment of the trust income. If during this period they could not control the disposition of trust income, they argue that the taxable trust income should be taxed to the trust, not to them. Taxpayers attempt to bolster this argument by referring to section 673 of the Code, Reversionary interests, 26 U.S.C. § 673 (1967), which provides in relevant part:

(a) *General Rule.*—The grantor shall be treated as the owner of any portion of a trust in which he has a reversionary interest in either the corpus or the income therefrom if, as of the inception of that portion of the trust, the interest will or may reasonably be expected to take effect in possession or enjoyment within 10 years commencing with the date of the transfer of that portion of the trust.

We, however, interpret the reference to section 673 in the excepting clause to section 677 as referring not merely to the ten year period of time during which the grantor of a trust may not have an existing exercisable power to affect the distribution of trust income but also to the income received by the trust during that ten year period. Thus, we do not agree with taxpayers that a grantor of a trust is entitled to the benefits of the excepting clause of section 677 as long as he may not during the initial ten year period of the trust affect the disposition of the trust income even though after ten years and a day the grantor may cause the accumulated trust income to be distributed to himself.

Nor does the last part of the excepting clause, "but the grantor may be treated as the owner after the expiration of the [ten year] period unless the power is relinquished," compel a contrary interpretation. That part of the excepting clause provides only that subsection 677(a) does not apply to powers the exercise of which can affect the beneficial enjoyment of trust income received only after ten years. This provision was intended to insure that a power over trust income received after the initial ten year period would not itself taint the trust income received during the ten year period. It was not intended to exempt a grantor from taxation on trust income received during the ten year period if after the expiration of that period the grantor has the power to dispose of that very income. S.Rep.No. 1622, 83d Cong., 2d Sess. 371; 3 United States Code Cong. & Admin.News, pp. 4621, 5012 (1954).

Our interpretation of the excepting clause of section 677 is supported by the considered interpretation of the agencies charged with administering the tax laws. Thus, Treas.Reg. § 1.677(a)–1(e), (f) (1965) explains the excepting clause as follows:

(e) The last sentence of section 677(a) provides an exception to the general rule when a discretionary right can only affect the beneficial enjoyment of the income of a trust received after a period of time which is such that a grantor would not be

treated as an owner under section 673 if the power were a reversionary interest. See §§ 1.673(a)–1 and 1.673(b)–1. For example, if the ordinary income of a trust is payable to B for 10 years and then in the grantor's discretion income or corpus may be paid to B or to the grantor, the grantor is not treated as an owner with respect to ordinary income under section 677 during the first 10 years. He will be treated as an owner under section 677 after the expiration of the 10-year period unless the power is relinquished.

. (f) However, if income is accumulated in any taxable year for future distribution to the grantor, section 677(a)(2) treats the grantor as an owner for that taxable year. *The exception set forth in the last sentence of section 677(a) does not apply merely because the grantor must await the expiration of a period of time before he can receive or exercise discretion over previously accumulated income of the trust, even though the period is such that the grantor would not be treated as an owner under section 673 if a reversionary interest were involved.* Thus, if income (including capital gains) of a trust is to be accumulated for 10 years and then will be, or at the discretion of the grantor *may be*, distributed to the grantor, the grantor is treated as the owner of the trust from its inception. (emphasis added.)[3]

3. The Treasury Regulation also provides the following examples to illustrate the application of Section 677(a):

*Example (1).* G creates an irrevocable trust which provides that the ordinary income is to be payable to himself for life and that on his death the corpus shall be distributed to a designated charity. Except for the right to receive income, G retains no right or power which would cause him to be treated as an owner under sections 671 through 677. Under the applicable local law capital gains must be applied to corpus. During the taxable year 1955 the trust has the following items of gross income and deductions:

| | |
|---|---|
| Dividends | $5,000 |
| Capital gain | 1,000 |
| Expenses allocable to income | 200 |
| Expenses allocable to corpus | 100 |

Since G has a right to receive income he is treated as an owner of a portion of the trust under section 677. Accordingly, he should include the $5,000 of dividends, $200 income expense, and $100 corpus expense in the computation of his taxable income for 1955. He should not include the $1,000 capital gain since that is not attributable to the portion of the trust that he owns. See § 1.671–3. The tax consequences of the capital gain are governed by the provisions of [subparts A, B, C, and D (section 641 and following), part I, subchapter J, chapter 1 of the Code]. Had the trust sustained a capital loss in any amount the loss would likewise not be included in the computation of G's taxable income, but would also be governed by the provisions of [such subparts].

*Example (2).* G creates a trust whose ordinary income is payable to his adult son. Ten years from the date of transfer or on the death of his son, whichever is earlier, corpus is to revert to G. In addition, G retains a discretionary right to receive $5,000 of ordinary income each year. (Absent the exercise of this right all the ordinary income is to be distributed to his son.) G retains no other right or power which would cause him to be treated as an owner under subpart E [(section 671 and following), of such part I]. Under the terms of the trust instrument and applicable local law capital gains must be applied to corpus. During the taxable year 1955 the trust had the following items of income and deductions:

| | |
|---|---|
| Dividends | $10,000 |
| Capital gain | 2,000 |
| Expenses allocable to income | 400 |
| Expenses allocable to corpus | 200 |

Since the capital gain is held or accumulated for future distributions to G, he is treated under section 677(a)(2) as an owner of a portion of the trust to which the gain is attributable. Therefore, he must include the capital gain in the computation of his taxable income. (Had the trust sustained a capital loss in any amount, G would likewise include that loss in the computation of his taxable income.) In addition, because of G's discretionary right (whether exercised or not) he is treated as the owner of a portion of the trust which will permit a distribution of income to him of $5,000. Accordingly, G includes dividends of $5,208.33 and income expenses of $208.33 in computing his tax·

Moreover, in 1957, the Internal Revenue Service issued a ruling in which it adopted the same interpretation of the excepting clause of section 677 under the following circumstances. The grantor created a trust, irrevocable for 12 years, in which an independent trustee was empowered to expend any and all of the trust principal and income for the education, maintenance and welfare of the beneficiary, the grantor's child. Any income not expended or distributed could be accumulated or invested by the trustee at his discretion. At the expiration of the trust, the trustee was required to return to the grantor any principal not expended or distributed and to the grantor or the beneficiary any accumulations of income. In that case the grantor-taxpayer also argued that the trust provisions fell within the excepting clause of section 677. However, the IRS found that because the trustee's power over current income, that is, income accruing to the trust during its 12 year life, might in fact result in the accumulation of income not for the benefit of the beneficiary but for the benefit of the grantor, the grantor was taxable for trust income received during the 12 year period. The IRS expressed its opinion in the following rule: "where the trustee has a power to withhold distribution of trust income from the beneficiary and accumulate the amount so withheld for ultimate distribution to the grantor or to his estate, the grantor will be treated as the owner of the trust under the provisions of section 677(a)(2) of the Internal Revenue Code of 1954, and the income therefrom will be taxable to him." Rev.Rul. 363, 1957–2 Cum.Bull. 326, 329.

This Revenue Ruling was relied upon by the court in Humphrey v. United States, 245 F.Supp. 49 (D.Kan.1965), where the court reached the result we reach here in considering the taxability of the grantor of a trust having provisions similar to the trust in this case.[4] There, the grantor-taxpayer created a trust for the benefit of his children, irrevocable for 15 years, in which the trust corpus consisted of the grantor's one-third interest in a partnership. The trustee, the grantor, his brother and his father, were authorized to invest or accumulate the earnings of the trust. The trust instrument provided that after the expiration of the trust, all trust property remaining and unexpended would at the option of the grantor revert to him. The court found that because the trustees were empowered to accumulate trust income which might, after 15 years, be distributed to the grantor, the grantor should be treated as the owner of the trust from its inception.

We believe that the Code, the regulations and rulings promulgated thereunder, and the court's decision in *Humphrey, supra,* require that when a trustee has the power to accumulate trust income during the initial ten years of the trust and this income may thereafter be received by the grantor, the grantor may not avail himself of the excepting clause of section 677.

---

able income, determined in the following manner:

| | |
|---|---|
| Total dividends | $10,000.00 |
| Less: Expenses allocable to income | 400.00 |
| Distributable income of the trust | 9,600.00 |
| Portion of dividends attributable to G (5,000/9,600 × $10,000) | 5,208.33 |
| Portion of income expenses attributable to G (5,000/9,600 × $400) | 208.33 |
| Amount of income subject to discretionary right | 5,000.00 |

In accordance with [paragraph (c) of § 1.-671–3], G also takes into account $104.17 (5,000/9,600 × $200) of corpus expenses in computing his tax liability. The portion of the dividends and expenses of the trust not attributable to G are governed by the provisions of [subparts A through D].

4. This case is substantially the same as Humphrey v. C. I. R., note 2, *supra,* discussed by the district court, involving identical trusts created by one Humphrey brother in the one case, and the other Humphrey brother in the other.

■ Accordingly, the taxpayers in this case are subject to the general rule of section 677(a) unless the trustee is an adverse party within the meaning of section 672(a) of the Code, 26 U.S.C. § 672(a) (1967). Section 672 defines an adverse party as "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust. . . ." Section 672(a), on its face, defines an adverse party as a person having a beneficial interest in the trust, that is, a beneficiary of the trust. In this case, the Provident Bank is not a beneficiary and is not, therefore, an adverse party. This conclusion is reinforced by the Treasury Department's explanation of this term:

> Under section 672(a) an adverse party is defined as any person having a substantial beneficial interest in a trust which would be adversely affected by the exercise or nonexercise of a power which he possesses respecting the trust. *A trustee is not an adverse party merely because of his interest as trustee.* A person having a general power of appointment over the trust property is deemed to have a beneficial interest in the trust. An interest is a substantial interest if its value in relation to the total value of the property subject to the power is not insignificant. (emphasis added).

Treas.Reg. 1.672(a)–(1) (1956).

We, therefore, reject taxpayers' argument that a trustee who is independent of the grantor of a trust may properly be considered an adverse party because he is required by law to act solely in the interest of the beneficiaries of the trust. Both the language of the statute requiring an adverse party to have a beneficial interest in the trust and the Treasury Department's reasonable interpretation of this definition that a trustee, *qua* trustee, is not an adverse party preclude placing such a gloss on the statute.

Therefore, because the Provident Bank, as trustee, is not an adverse party and because under the terms of the trust it may accumulate trust income during the initial ten years of the trust for possible future distribution to the grantors without the consent of the beneficiaries, we determine that the taxable trust income is properly includible in taxpayers' income.

Reversed and remanded for proceedings not inconsistent with this opinion.