**UNITED STATES of America, Plaintiff,**

v.

**Sylvester ATKINS, Defendant.**

**No. 73–29Cr(2).**

United States District Court,
E. D. Missouri, E. D.

Aug. 10, 1976.

Defendant convicted on two counts of indictment charging him with sales of a controlled substance filed motion for new trial upon newly discovered evidence. The District Court, Regan, J., held that recantation testimony of informer who was in fear of his life and whose testimony at trial as to purchases of heroin from defendant was corroborated by two police officers who witnessed the transaction with the aid of binoculars was not credible; and that inconsistency between statement made by officer in his complaint that after the sale was completed the informant handed the narcotic drug to the complainant, and testimony at trial that informant handed the drug to other officers, afforded no basis for new trial since the offense was completed without regard to the particular individual to whom informant handed the drug.

Richard E. Coughlin, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Larry B. Luber, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION

REGAN, District Judge.

Defendant was convicted on two counts of an indictment charging him with sales of a controlled substance in violation of Section 841(a), 21 U.S.C.[1] On May 4, 1973, he was sentenced to consecutive terms of twelve years imprisonment on each count.

---

1. A third count, charging another sale, was dismissed at the instance of the Government when the informer who allegedly made that purchase disappeared without a trace after having been subpoenaed.

The conviction was affirmed on November 9, 1973 in *United States v. Atkins,* 487 F.2d 287 (8 Cir. 1973). On May 8, 1975, defendant filed a "motion for new trial upon newly discovered evidence." Counsel was appointed to represent defendant and an evidentiary hearing was held on the motion. After full consideration, we have concluded that the motion should be overruled.

Defendant's major contention is that the government's informant (Bert Dilworth) who testified at the trial committed perjury and that he has since recanted his testimony. At the trial, Dilworth's testimony was to the effect that on each of the two occasions involved he purchased heroin from defendant. Vigorous cross-examination failed to shake him. His testimony was corroborated by two police officers who witnessed the transaction with the aid of binoculars. Defendant testified in his own defense that he had never even met the informant (although he knew who he was), and that on the occasions in question he (defendant) was playing ball at another location. This alibi defense was supported by other testimony. In addition, a witness for defendant testified that several weeks before the trial Dilworth had asked to be introduced by him to defendant. Thus, the issues for the jury to resolve were peculiarly dependent on credibility. In our judgment, the jury's verdict was amply justified.

At the hearing held on defendant's motion, Dilworth testified that he had lied at the trial, and that he had not in fact purchased any heroin from defendant on either of the two occasions. The following background facts are pertinent. On each occasion, following the alleged purchase, Dilworth signed a statement prepared by the officers (agents of Drug Abuse Law Enforcement, known as DALE) in which he verified that defendant had made the heroin sale to him. Subsequently, while incarcerated in the City Jail on a state charge, Dilworth was interviewed on two occasions by the government prosecutor. Each time he told the prosecutor the facts of the occurrences, verifying, but in greater detail, the accuracy of the statements he had given the DALE agents.

A few days before trial, while Dilworth was still in jail, counsel for defendant (James Bell) talked with him. At that time Dilworth told Bell that he had not in fact purchased any "dope" for the police and that whatever he purchased was for himself. At the trial, when cross-examined concerning his statements to Bell, Dilworth testified that it was because he knew that Bell represented the defendant that he had lied to Bell. He also testified that he had read the DALE statements before signing them and that they were accurate. On redirect examination when asked why he hadn't told Bell the facts to which he testified, he responded: "Because I wanted him to think that I didn't make the sale on Sylvester because I ain't wanting nobody to kill me in City Jail." He further testified that his trial testimony was true, and was not made as the result of any promises or threats.

Defendant was found guilty on April 12, 1973. Thereafter, on May 29, 1973, Dilworth signed an affidavit in Bell's office in the presence of defendant's "girl friend" (with whom Dilworth was then living), defendant's mother and Bell, in which he repudiated his trial testimony. The affidavit was not timely disclosed to the Court or to the prosecution, defendant's counsel having decided, as a matter of "strategy," to first seek a reversal of the conviction on direct appeal and then, if that effort proved unsuccessful, to use the affidavit as a basis for obtaining a new trial.

We are convinced that Dilworth's trial testimony was truthful and that the affidavit and his testimony at the hearing on the motion for a new trial are false. At the trial his testimony was straightforward and bore all the indicia of truth. On the other hand, when testifying at the hearing, his hesitancy in responding to vital questions, his demeanor on the stand and his evident nervousness evidenced his lack of credibility. In addition, Dilworth admitted that he had twice told police officers that the affidavit given to Bell was false and coerced.

A tape recording of one such conversation was made part of the record.

We have no doubt whatever that Dilworth made the recanting affidavit as the result of threats of physical harm made by defendant's brother (since killed) and two other "chumps" (the statement he made in the tape recorded conversation). Confirmatory of that state of mind is the fact that two or three months after the trial Dilworth admittedly requested police protection because he feared for his life. And, of course, his testimony at trial as to the reason for misleading Bell when interviewed in the City Jail is further indicative of his state of mind.[2] We are also of the opinion that fear was the motivation for Dilworth to testify at the hearing that his trial testimony was not true.

If we were to credit Dilworth's recantation, it would necessarily follow that the officers who testified to witnessing the transactions with defendant through binoculars were also guilty of perjury as well as subornation of perjury. It is obvious that the real thrust of defendant's motion is that the DALE agents manufactured a case against him by persuading informant Dilworth to swear falsely to dealings with an innocent man in an effort to secure his conviction. These are serious charges affecting the administration of justice not to be lightly brushed aside. They have no support, however, other than the weak and halting testimony of a man in fear of his life, testimony without even any circumstantial corroboration. The fear was generated not by police or other officers of the law, but by threats, actual and implied, made by partisans of defendant.

█ Wholly aside from the general rule that where a motion for new trial is based on a witness' repudiation of his trial testimony, such recantation is looked upon with disfavor (*United States v. Coleman,*

460 F.2d 1038, 1040 [8 Cir. 1972]; *Batsell v. United States,* 403 F.2d 395, 403 [8 Cir. 1968]), we are firmly of the view that Dilworth's recantation testimony is not credible.

█ A further ground of the motion for new trial is that one statement made under oath by officer Loehr in his complaint against defendant before the magistrate is factually inconsistent with details of the August 2, 1972, transaction which were testified to by the government witnesses. The Complaint made by him states, inter alia, that after the sale was completed the confidential informant returned to the complainant and handed *him* the narcotic drug. The testimony at trial was that Dilworth "handed" the drug to other officers. Even if Leohr was mistaken or careless in swearing to this portion of the complaint, it affords no basis for a new trial, particularly since the offense was completed without regard to the particular individual to whom Dilworth "handed" the drug after it was sold to him by defendant. Loehr did not testify at the trial. Even if the "discrepancy" as to this detail on the part of Loehr had been brought to the attention of the jury, it could not conceivably have resulted in the jury reaching a different conclusion on the merits of the August 2 charge against defendant, to say nothing of the August 16 charge as to which this point is not directed.

The foregoing memorandum constitutes our findings of fact and conclusions of law. An order will be entered overruling the motion for a new trial.

---

**2.** We judicially know that following his testimony at the trial, the Government made a showing that by reason of Dilworth's appearance and testimony his physical safety and life was in danger, and for that reason we ordered that he not be returned to the City Jail but instead be confined elsewhere and be kept sep-

arate from other prisoners. We are also cognizant of the fact that drug-related murders are not uncommon in the St. Louis area. It is not without some significance that the informer involved in the third count failed to appear after being subpoenaed by the Government.