CHARLES AMABILE AND CARMELA AMABILE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Amabile v. Commissioner
Docket No. 1283-84.
United States Tax Court
T.C. Memo 1986-180; 1986 Tax Ct. Memo LEXIS 427; 51 T.C.M. (CCH) 963; T.C.M. (RIA) 86180; May 1, 1986. John F. Papsidero, for the petitioner. Anne M. DiFonzo, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION
*429 PARR, Judge:* Respondent determined a deficiency in petitioners' Federal income tax for the taxable years 1979 and 1980 in the amounts of $2,838 and $5,457, respectively. The only issue presented is whether under section 677 [1] Charles Amabile should be treated as the owner of 100 per cent and 50 percent, respectively, of two trusts. This case was submitted fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein. The pertinent facts are summarized below. FINDINGS OF FACT Petitioners Charles and Carmela Amabile, husband and wife, resided in North Tonawanda, New York on January 16, 1984, the date the petition was filed in this case. They filed their joint Federal income tax returns for the calendar years 1979 and 1980 with the Internal Revenue Service Center in Andover, Massachusetts. Carmela's Trust
*430 On July 15, 1973, Charles created an inter vivos irrevocable trust for the benefit of Carmela (Carmela's Trust). Charles' brother, Angelo C. Amabile, was named trustee. Carmela's Trust provides, in pertinent part, as follows: Article I: * * * During the lifetime of the grantor, the trustee shall distribute income to the primary beneficiary Carmela C. Amabile in such amount as the trustee, in his sole discretion, shall determine; in the event the grantor predeceases the primary beneficiary, the trustee shall distribute to the primary beneficiary the amount of twenty thousand and no/100 ($20,000.00) dollars as soon as possible, then per year from income and/or principal payable not more frequently than quarterly. Any net income not paid or applied by the trustee during any trust, [sic] accounting year shall be added to the principal of the trust estate. The primary beneficiary may, at any time, or from time to time, request distribution to her from principal and may receive such distributions only with the consent of the trustee which shall not be unreasonably withheld. However, in the event the trustee fails to consent, and the primary beneficiary feels that the failure *431 to consent is unreasonable, then John F. Papsidero is hereby appointed to arbitrate and decide the matter. In the event John F. Papsidero becomes trustee, pursuant to Article VII of this agreement, then the primary beneficiary and the trustee will select an arbitrator. Article II: The grantor directs the trustee to receive the income and dispose of the income of the trust subject to the provisions contained in this agreement during the lifetime of the primary beneficiary. Upon the death of such beneficiary, the trustee shall pay or distribute any principal remaining in such beneficiary's trust, as it shall then exist, together with all income then accrued but not then collectible, in such shares or proportions as such beneficiary, by her last will and testament duly admitted to probate shall appoint, or in default of such appointment or to the extent such appointment is ineffective, to and among the issue of such beneficiary then living, per stirpes, or if no issue of such beneficiary shall be living then, to or among the person or persons to whom, and in such as, [sic] the grantor's net distributable estate would be distributable if he had died intestate immediately after *432 the death of such beneficiary and a resident of New York State. Under Article III, the trustees are given wide latitude to manage the trust, including the authority to purchase and otherwise acquire property and to "make distributions in cash or in kind or partly each." The trustee must submit an accounting to the beneficiary within 90 days following the end of an accounting year, and the written approval of any accounting of the trustee by all of the persons of full age and sound mind to whom the trustee in then authorized to distribute the current income from the trust shall bind and be conclusive upon all persons having or claiming any interest under this agreement * * *. Article IX provides that the trust agreement shall be construed under the laws of the State of New York. Upon the trust's creation, Charles assigned to it a note payable from H & F Food Products Company, Inc. (H & F) in the amount of $50,000, with interest payable at 7-1/2 percent per annum. Apparently, Carmela's Trust later received additional assets. A schedule attached to the U.S. Fiduciary Income Tax Return (Form 1041) filed for the fiscal year ending June 30, 1979 reflects interest income of $5,572.82 *433 from certificates of deposit and $1,033.23 from Niagara First Savings and Loan in addition to $3,290.00 from H & F. No further information appears in the record regarding the source of this income. [2] In addition, the trust deducted on the same return $728.44 to insure an asset, the identity of which is unrevealed. Some rental property was obtained by the trust, but not until January 2, 1980, as reflected on a Form 4562 depreciation schedule attached to the Form 1041 filed for the trust's fiscal year ended June 30, 1980. No proof has been offered to suggest how, or with what funds, this property was obtained. [3]
*434 The following income and deductions were reported by Carmela's Trust for the fiscal years at issue: FYE
FYE
6/30/79
6/30/80
Interest income
[4] $9,896.05 $18,119.00 Rental income
Depreciation
[5] (1,363.00)
Rental expenses
(632.00)
Interest expense
(4,364.00)
Taxes
(349.65)
(427.00)
Professional fees
(200.00)
(300.00)
Insurance [6]
(728.44)
(787.00)
Distributions
(600.00)
(400.00)
Exemption
(300.00)
(300.00)
$7,717.96 $ 9,546.00 In the taxable year ended June 30, 1979 Carmela's Trust distributed $600 to Carmela, which petitioners reported as income on their income tax return for 1979. In the taxable year ended June 30, 1980, Carmela's Trust *435 distributed $400 to Carmela, which petitioners reported as income on their income tax return for 1980. In the notice of deficiency respondent disregarded Carmela's Trust in full. Respondent attributed the trust's income and deductions for the taxable years ended June 30, 1979 and June 30, 1980 to Charles, in calendar years 1979 and 1980. Respondent recalculated petitioners' 1979 and 1980 taxable income accordingly. The Ramsdell Street Trust
On July 1, 1979 Charles and Angelo created the Ramsdell Street Trust. As will become apparent, the record is weighed and found wanting when it comes to the second trust. Charles and Angelo were both the grantors and the trustees of the Ramsdell Street Trust. [7] According to Article I of the trust document the beneficiaries are: 50 percent-- Charles M. Amabile, trustee, under an agreement dated July 15, 1973. 50 percent-- Angelo C. Amabile, trustee, under an agreement dated July 15, 1973. On its state fiduciary return for the fiscal year ended June 30, 1980, the Ramsdell *436 Street Trust lists one of the beneficiaries as Carmela Amabile of petitioners' address. We therefore infer that the second agreement referred to in Article I, above, is the instrument creating Carmela's Trust, and that Carmela's Trust is a 50 percent beneficiary of the Ramsdell Street Trust. The other beneficiary listed on the state fiduciary return is Angela Amabile, of Tucson, Ariz. The record is silent as to the identity of Angela Amabile. However, based on the state fiduciary return which has been stipulated into evidence, we infer that a trust of which she is the beneficiary is itself the beneficiary of the remaining 50 percent of the Ramsdell Street Trust, and that Charless Amabile is trustee of Angela's trust which was created, like Carmela's Trust, on July 15, 1973. The Ramsdell Street Trust is irrevocable. It expires after 15 years "unless sooner terminated at the discretion of the Trustees or upon the direction of a majority of the beneficiaries, at which time this trust shall terminate and the assets contained herein shall be distributed to the beneficiaries." Article II of the trust provides "The Trustees shall collect the income [from corpus and future additions *437 thereto], which may be paid or applied to the use and benefit of the beneficiaries until the termination of the trust." The trustees are given wide latitude to manage the trust, including the authority to purchase and otherwise acquire property and "to make distributions in cash or in kind or partly each." They have the power to "do all the things which the Grantors might do if they were managing the Trust Estate as the individual and absolute owner thereof * * *." Again, written approval of an accounting by then-present income beneficiaries "shall bind and be conclusive upon all persons having or claiming any interest under this agreement * * * and shall be a complete discharge to the Trustees * * *." Unlike the case with Carmela's Trust, however, the trustees do not appear to be required by the terms of the trust instrument to submit such an accounting. The record is unclear as to the corpus of the Ramsdell Street Trust. The trust instrument says only that the trustees "have received certain property and have agreed to have and to hold said property together with any additional property hereafter received by the Trustees * * *." Article II of the trust instrument says "the *438 Trustees shall collect the income therefrom, which may be paid or applied to the use and benefit of the beneficiaries until the termination of the Trust." The Form 1041 for the taxable year ended June 30, 1980 reports rental income on Schedule A from property listed at "321 Ramsdell Avenue, Industrial." [8] The depreciation schedule (Form 4562) attached to the return indicates a building acquired July 1, 1979 (the date the trust was created), whose cost or other basis is $35,000.Based on the foregoing, we cannot conclusively determine how the real estate was acquired by the trust, whether by contribution or purchase or otherwise. Neither can we determine what, if any additional assets were acquired by the Ramsdell Street Trust, when, how, or from whom. No distributions were made by the Ramsdell Street Trust in the taxable year ended June 30, 1980. The following income and deductions were reported by the trust for that year: Interest income
$241.00 Rents received
7,200.00 Depreciation
(1,400.00)
Rental expenses
(1,640.00)
N.Y. taxes
(112.00)
Exemption
(300.00)
$3,989.00 *439 Respondent disregarded 50 percent of the Ramsdell Street Trust, treating 50 percent of its income and deductions for the taxable year ended June 30, 1980 as those of petitioners in their 1980 tax year. OPINION Under the grantor trust provisions of sections 671 through 678, the grantor or another person may be treated for tax purposes as the owner of all or a portion of a trust. Where the grantor is so treated, the trust is disregarded for tax purposes and items of income, deductions, and credits are attributed to the grantor under section 671. Respondent contends that these provisions are triggered here by section 677(a), which provides in pertinent part as follows: (a) General Rule. - The grantor shall be treated as the owner of any portion of a trust, * * * whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be-- (1) distributed to the grantor or the grantor's spouse; (2) held or accumulated for future distribution to the grantor or the grantor's spouse; * * * An adverse party is defined in section 672(a) as "any person having a substantial beneficial interest in the trust *440 which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust. A person having a general power of appointment over the trust property shall be deemed to have a beneficial interest in the trust." A nonadverse party means any person who is not an adverse party. Section 672(b). A beneficial interest includes a right to share in the income or corpus of the trust, either at the present time (such as an income beneficiary) or in the future (such as a remainder beneficiary). Section 1.672(a)-1(a), (b), Income Tax Regs. A trustee does not have a beneficial interest and cannot be an adverse party solely on the strength of the fiduciary relationship and the trustee's right to fees or commissions. Section 1.672(a)-1(a), Income Tax Regs; see also Duffy v. United States,487 F.2d 282 (6th Cir. 1973), cert. denied 416 U.S. 938 (1974). Respondent contends that under the above principles Charles should be treated as the owner of 100 percent of Carmela's Trust and 50 percent of the Ramsdell Street Trust. Of course, the normal presumption of correctness applies to respondent's determination, and the burden *441 of proving that determination incorrect rests with petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). We turn now to an examination of the trusts involved herein, in light of the above principles. Carmela's Trust
Carmela's Trust appears to fall squarely within the provisions of section 677(a). The application of section 677 was expanded by the Tax Reform Act of 1969 [9] to provide that the grantor would be treated as owner of any portion of a trust whose income could be distributed to, or accumulated for, the grantor's spouse. Prior to the amendment, section 677 only applied when income could be distributed or held for the benefit of the grantor. Here, Charles is the grantor and Carmela is his spouse. Income is or may be ddistributed to her, or held for future distribution to her in the trustee Angelo's discretion. A remaining question, however, is whether, under the terms of the trust, the approval or consent of adverse party is required. Angelo holds no beneficial interest and is thus a nonadverse party under section 672. Carmela clearly does have a beneficial interest and *442 would ordinarily qualify as an adverse party, [10] but for the 1969 amendment. By that amendment, Congress effectively ruled out the possibility of a spouse being treated as an adverse party when a provision in the trust allows for the income to be used for that spouse's benefit. Vercio v. Commissioner,73 T.C. 1246, 1258 (1980). Section 1.677(a)-1(b)(2), Income Tax Regs., supports this conclusion. [11] Carmela is not an adverse party. *443 Although contingent beneficiaries of Carmela's Trust may have an adverse interest therein, their consent or approval is not required before distributions are made to Carmela. Income may thus be distributed to Carmela without the approval or consent of any adverse party. Section 677(a) controls. The thrust of petitioners' argument deals with the identity of the grantor. On brief, they contend "[i]t cannot be assumed by the Court that since Charles Amabile is called a grantor by the trust language he is also a contributor of any asset other than the promissory note." They state that interest payable at 7-1/2 percent on the $50,000 H & F note would yield no more than $3,750 per year. They seem to suggest that this should limit Charles' tax liability as grantor of Carmela's Trust. In their two page reply brief petitioners add: Respondent's position is based upon the arbitrary assumption that Charles Amabile did in fact transfer property to the trust for the benefit of Carmela Amabile, and did in fact transfer property to the Ramsdell Street Trust. The respondent does not request any finding of fact showing the transfer of property into the respective trusts by Charles Amabile. *444 Petitioners misconstrue the law. The adjustments shown in the notice of deficiency are based upon amounts of income and deductions reported by the trust in its Fiduciary Income Tax Returns for 1978 and 1979. Respondent's notice of deficiency is, therefore, clearly not arbitrary. Respondent's statutory notice is presumed to be correct. The burden to prove otherwise is on petitioners. Welch v. Helvering,290 U.S. 111 (1933); Rules 142(a), 122(b). There may be times when someone other than the actual creator of a trust is its grantor. See Bixby v. Commissioner,58 T.C. 757 (1972). If petitioners had introduced competent evidence that someone other than Charles funded the trust, this argument would be relevant. However, petitioners' argument fails for lack of proof. We, therefore, agree with respondent and hold that under the provisions of section 677(a) Charles should be taxed as the owner of Carmela's Trust. Respondent's determination as to Carmela's Trust is sustained. The Ramsdell Street Trust
We also conclude that petitioners have not carried their burden with respect to the second trust. Despite their requested finding that *445 Charles did not transfer property into the trust, petitioners offered no competent proof of how the trust acquired its income-producing real property. Carmela's Trust (and, hence, Carmela) could receive distributions from the Ramsdell Street Trust without the assent of any adverse party. Therefore, under the rationale discussed above, we sustain respondent's determination that Charles is the 50 percent owner of the Ramsdell Street Trust. Welch v. Helvering,290 U.S. 111 (1933), Rules 142(a), 122(b). In any event, simple logic demands the same result. We have already concluded Charles must be treated as the owner of Carmela's Trust. Carmela's Trust owns 50 percent of the Ramsdell Street Trust. Therefore, Charles must be treated as the owner of 50 percent of the Ramsdell Street Trust. Years of Inclusion
With regard to both trusts, petitioners contend that even if respondent is correct on the merits, the entire annual trust income cannot be attributed to them in the calendar year within which the trust's fiscal year ends. They assert income should pass through to them in the calendar year it was actually earned. Petitioners are correct. See Scheft v. Commissioner,59 T.C. 428 (1972). *446 Although we have here a fractional trust interest which we did not have in Scheft, the complexities posed by such a situation are not so great as to compel a contrary result on this issue. See Scheftv. Commissioner,supra at 435. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned to Judge Parr↩ for decision and opinion. 1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. We note, however, that the petition alleges Charles transferred to the trust on its formation 50 shares of common stock of the Amabile Brothers Realty Corporation and yearly thereafter an indefinite number of shares of common stock of H & F Food Products Co., Inc. The relationship between these assets and the interest-bearing assets scheduled in the 1979 fiduciary return is not clarified by petitioners' statement on brief that "there is no evidence to show that the petitioner, Charles Amabile, was the grantor of any portion of either trust except the promissory note transferred to [Camela's] trust * * *." We note further that the trust agreement refers to a schedule "hereunto appended" of all property transferred to the trust by the grantor. That schedule is conspicuously absent from the record. ↩
3. However the interest income reported on the 1980 fiduciary return was almost double that reported on the 1979 fiduciary return. This makes the lack of proof as to the source of funds for the realty purchase more glaring.↩
4. Respondent rounded off these figures in attributing them to petitioners' income for 1979. ↩
5. In his notice of deficiency respondent allocated $1,362 as a deduction on petitioners' 1980 income taxes. No explanation for this discrepancy appears in the record. ↩
6. Respondent did not allow petitioners a deduction for this item. No explanation appears in the record. However, since petitioners have not contested this item, respondent's determination is presumed correct.↩
7. So stipulated. Moreover, the trust's state fiduciary return for the fiscal year ending June 30, 1980 indicates the grantors are "same as trustees."↩
8. The trustees' address listed on Form 1041 is 321 Ramsdell Avenue.↩
9. Pub. L. 91-172, sec. 332, 83 Stat. 599 (1969).↩
10. The old assumption that because of family solidarity a wife's interest in income is not adverse to her husband's, is a concept that often counters reality. Each wife stands on her own feet. Laganas v. Commissioner,281 F.2d 731, 735↩ (1st Cir. 1960). 11. Sec. 1.677(a)-1(b)(2), Income Tax Regs., provides in part: With respect to property transferred in trust after October 9, 1969, the grantor is treated, under section 677, in any taxable year as the owner (whether or not he is treated as an owner under section 674) of a portion of a trust of which the income for the taxable year or for a period not within the exception described in paragraph (e) of this section is, or in the discretion of the grantor, or his spouse, or a nonadverse party, or any combination thereof (without the approval or consent of any adverse party other than the grantor's spouse)may be:
(i) Distributed to the grantor or the grantor's (ii) Held or accumulated for future distribution to the grantor or the grantor's spouse * * * [Emphasis added.]↩