Adolph K. KRAUSE and Janet S. Krause, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Respondent-Appellee.

No. 73–1866.

United States Court of Appeals, Sixth Circuit.

Argued April 2, 1974.

Decided May 30, 1974.

**1110**

Donald A. Statland, Chicago, Ill., for petitioners-appellants; Calvin Eisenberg, Howard C. Flomenhoft, Chicago, Ill., on brief.

Jane M. Edmisten, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee; Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Michael L. Paup, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and WALINSKI, District Judge.*

PHILLIPS, Chief Judge.

Mr. and Mrs. Adolph K. Krause (taxpayers) appeal from a decision of the United States Tax Court, per Judge Samuel B. Sterrett, upholding the Commissioner's determination of deficiencies in taxpayers' federal income tax for the taxable years 1964, 1965 and 1966. We affirm.

For a comprehensive statement of the facts, reference is made to the opinion of Judge Sterrett, 57 T.C. 890 (1972).

In 1959 taxpayers created and capitalized a Michigan limited partnership named A. K. Company. Contemporaneously, Mr. Krause created three trusts naming taxpayers' children as beneficiaries, and Mrs. Krause created three trusts naming their grandchildren as beneficiaries. The childrens' trusts were each funded with $100 and 50 shares of Wolverine Shoe & Tanning Corp. (now Wolverine World Wide, Inc.). The grandchildrens' trusts were each funded with $100 and 25 shares of Wolverine stock. Wolverine is an outgrowth of a partnership begun by the Krause family in 1883, and in all years pertinent hereto Mr. Krause was president and a director of Wolverine.

Simultaneously with the execution of the partnership and trust agreements, Mr. Krause executed a series of documents wherein he agreed to transfer his 60 per cent limited partnership interest in A. K. Company to the six trusts in exchange for $100 and 80 per cent of the income received by the trusts from A. K. Company for a period of 16 years. Fifteen per cent of the limited partnership interest was allocated to each of the three childrens' trusts and five per cent was allocated to each of the three grandchildrens' trusts.

The Commissioner, claiming that the six trusts were not bona fide partners in

---

* Honorable Nicholas J. Walinski, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

the A. K. Company within the meaning of § 704(e) of the Internal Revenue Code of 1954, 26 U.S.C. § 704(e), asserted deficiencies for the calendar years 1964 through 1966 on the basis that all the income received by the trusts was taxable to taxpayers rather than the trusts.

From the adverse decision of the Tax Court upholding deficiencies for the three years aggregating $97,654.07, taxpayers raise three issues on appeal: 1) Were the six trusts bona fide partners in the A. K. Company within the meaning of § 704(e) of the Code? 2) Were taxpayers liable for taxes on the income produced by 25 shares of Wolverine stock held by each of the six trusts? 3) Did the Tax Court err in computing the deficiencies?

I.

■ After considering all of the factors in this case, the Tax Court correctly found that taxpayers retained too many incidents of ownership for the trusts to be the real owners of the partnership interest. Reference is made to 57 T.C. at 898 for a convincing listing of these incidents of ownership.

Taxpayers do not contest that they retain numerous incidents of ownership over the trusts. Rather they contend that the Tax Court erred in that (a) the trusts are bona fide partners in A. K. Company within the plain language of § 704(e) of the Code, and (b) the principles established in United States v. Byrum, 408 U.S. 125, 92 S.Ct. 2382, 33 L. Ed.2d 238 (1972), a case decided subsequent to the decision of the Tax Court, preclude taxation of the income received by the trusts to them.

■ Section 704(e) of the Code provides, in effect, that a person may be recognized as a partner for income tax purposes "if he *owns* a capital interest in a partnership in which capital is a material income-producing factor." (Emphasis added.) That section was enacted to prevent taxpayers from using the family partnership as a means of splitting family income and thus circumventing the progressive tax rate structure of the federal income tax. The legislative history of the section shows that Congress wanted the Commissioner and the courts to inquire into the question of whether the donee or the purchaser actually owns the purportedly transferred interest; and, in cases where the transferor retained incidents of ownership, it was the Congressional intent that he be taxable on the partnership's income. H.Rep.No.586, 82d Cong., 1st Sess., p. 33; S.Rep.No.781, 82d Cong., 1st Sess., pp. 39–40; 2 U.S.Code Cong. & Admin. News, pp. 1781, 1813–1815 & 1969, 2008–2010. Further, the Commissioner specifically implemented this Congressional purpose in Treas.Reg. § 1.-704–1(e)(1)(iii). This court recognized the Congressional purpose in Ballou v. United States, 370 F.2d 659, 661–662 (1966).

We are, therefore, unpersuaded by taxpayers' contention that the plain language of § 704(e) supports taxpayers' claim that the trusts were bona fide partners in A. K. Company.

Further, taxpayers rely on *Byrum, supra,* a case in which the Supreme Court held that the powers which a settlor of a trust held over certain trust income were not so great as to require inclusion of the trust in his gross estate under § 2036(a) of the Code. In *Byrum,* the settlor-decedent transferred to an irrevocable trust for the benefit of his children stock in three corporations which he controlled, retaining the right to vote the transferred stock, to veto the transfer by the trustee of any of the stock, and to remove the trustee and appoint another trustee as successor.

We conclude that *Byrum* is not controlling in the present case. The estate tax statute involved in *Byrum,* § 2036(a), is different, in terms of language, legislative history and objectives, from the income tax statute involved in the present case, § 704(e). Section 704(e) recognizes a person as a partner for tax purposes if he owns a capital interest in a partnership in which capi-

tal is a material income-producing factor. On the other hand, § 2036(a) requires the inclusion in decedent's gross estate of the value of any property which he has transferred by inter vivos gift, if he retained the enjoyment of the property for his lifetime or the right to designate who shall enjoy the income therefrom.

In addition to the fact that the present case involves a family partnership with entirely different language, legislative history and objectives than that contained in § 2036(a), taxpayers here retained greater incidents of ownership than did the settlor in *Byrum*. Taxpayers control the partnership in which the instant trusts purportedly "own" interests. They are the dominant force in the corporation whose stock forms the principal partnership asset. They have contingent rights to trust income and principal under the trust instruments. Through their power to control the trustees they have the power to realize on those contingencies. The Tax Court correctly concluded that taxpayers "retained a present income interest and reserved the right to reacquire the principal interest." 57 T.C. at 898.

We, therefore hold that the six trusts were not bona fide partners in the A. K. Company within the meaning of § 704(e). Consequently, taxpayers are taxable on the income attributable to the partnership interest.

## II.

In addition to the partnership interests held by the six trusts, each of the trusts held shares of Wolverine stock. The three childrens' trusts, which were funded by Mr. Krause, held 50 shares of Wolverine stock. The three grandchildrens' trusts, which were funded by Mrs. Krause, held 25 shares of Wolverine stock. The Tax Court determined that the taxpayers were taxable on the income arising from such holdings to the extent of mutual value, i. e., to the extent of the income on 25 shares of stock per trust. The court's conclusion in this

regard was based on the application of the reciprocal trust doctrine enunciated by the Supreme Court in United States v. Estate of Grace, 395 U.S. 316, 89 S. Ct. 1730, 23 L.Ed.2d 332 (1969), and by the grantor trust provisions contained in §§ 671 through 678 of the Code, specifically § 677(a)(2).

■ After careful consideration of the relevant trust provisions and the authorities cited by taxpayers, we hold that the Tax Court correctly decided this issue for the reasons set forth in its opinion. 57 T.C. at 899–903. See also, Duffy v. United States, 487 F.2d 282, 284–288 (6th Cir. 1973).

## III.

Following the filing of the Tax Court's opinion, the deficiencies due from taxpayers were computed pursuant to Rule 50 of the Tax Court. Over the objections of taxpayers, the Tax Court adopted the Commissioner's computation.

On appeal, taxpayers maintain that the Commissioner's computation was erroneous in that (a) it failed to allow them a credit for the tax paid by the trusts in respect of the income subsequently taxed to taxpayers, and (b) it erroneously ignored the fiscal year of the trusts in determining the amounts to be included in taxpayers' income.

■ Section 671 of the Code admittedly provides that when a grantor is to be treated for tax purposes as the owner of a trust that the grantor is entitled to the same deductions and credits as the trust would be entitled to. That section does not, however, provide that the grantor-taxpayer is entitled to credit the taxes paid by the trust against his own tax liability. The trust and the grantor-taxpayer are separate tax entities. We refuse to permit one to offset a tax liability by claiming a credit for taxes paid by the other absent a statute or regulation permitting such procedure.

■ We likewise find no merit in taxpayers' assertion that the Tax Court

erroneously ignored the fiscal year of the trusts in determining the amounts to be included in taxpayers' income. Although the trusts' fiscal years ended on January 31 (as opposed to the December 31 date on which taxpayers' taxable year ended), the Commissioner made a factual determination that all trust income taxed to taxpayers was realized during the year that it was taxed to them. This determination is not challenged on appeal.

Affirmed.