UNITED STATES *v.* ESTATE OF GRACE ET AL.

No. 574.   Argued April 22, 1969.—Decided June 2, 1969.

*Solicitor General Griswold* argued the cause for the United States. With him on the brief were *Acting Assistant Attorney General Roberts, Harris Weinstein, Harry Baum, Philip R. Miller,* and *Stuart A. Smith.*

*William S. Downard* argued the cause for respondents. With him on the brief was *Walter J. Rockler.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case involves the application of § 811 (c)(1)(B) of the Internal Revenue Code of 1939 to a so-called "reciprocal trust" situation.[1] After Joseph P. Grace's

---

[1] Section 811 (c)(1)(B) provided that—

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property . . .

.     .     .     .     .

"(c) . . .

"(1) *General rule.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

.     .     .     .     .

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or

death in 1950, the Commissioner of Internal Revenue determined that the value of a trust created by his wife was includible in his gross estate. A deficiency was assessed and paid, and, after denial of a claim for a refund, this refund suit was brought. The Court of Claims, with two judges dissenting, ruled that the value of the trust was not includible in decedent's estate under § 811 (c) (1)(B) and entered judgment for respondent. *Estate of Grace* v. *United States*, 183 Ct. Cl. 745, 393 F. 2d 939 (1968). We granted certiorari because of an alleged conflict between the decision below and certain decisions in the courts of appeals and because of the importance of the issue presented to the administration of the federal estate tax laws. 393 U. S. 975 (1968). We reverse.

## I.

Decedent was a very wealthy man at the time of his marriage to the late Janet Grace in 1908. Janet Grace had no wealth or property of her own, but, between 1908 and 1931, decedent transferred to her a large amount of personal and real property, including the family's Long Island estate. Decedent retained effective control over the family's business affairs, including the property transferred to his wife. She took no interest and no part in business affairs and relied upon her husband's judgment. Whenever some formal action was required regarding property in her name, decedent would have the appropriate instrument prepared and she would execute it.

On December 15, 1931, decedent executed a trust instrument, hereinafter called the Joseph Grace trust.

enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom . . . ."

Section 811 (c) (1) (B) has been recodified as § 2036 of the Internal Revenue Code of 1954, 26 U. S. C. § 2036.

Named as trustees were decedent, his nephew, and a third party. The trustees were directed to pay the income of the trust to Janet Grace during her lifetime, and to pay to her any part of the principal which a majority of the trustees might deem advisable. Janet was given the power to designate, by will or deed, the manner in which the trust estate remaining at her death was to be distributed among decedent and their children. The trust properties included securities and real estate interests.

On December 30, 1931, Janet Grace executed a trust instrument, hereinafter called the Janet Grace trust, which was virtually identical to the Joseph Grace trust. The trust properties included the family estate and corporate securities, all of which had been transferred to her by decedent in preceding years.

The trust instruments were prepared by one of decedent's employees in accordance with a plan devised by decedent to create additional trusts before the advent of a new gift tax expected to be enacted the next year. Decedent selected the properties to be included in each trust. Janet Grace, acting in accordance with this plan, executed her trust instrument at decedent's request.

Janet Grace died in 1937. The Joseph Grace trust terminated at her death. Her estate's federal estate tax return disclosed the Janet Grace trust and reported it as a nontaxable transfer by Janet Grace. The Commissioner asserted that the Janet and Joseph Grace trusts were "reciprocal" and asserted a deficiency to the extent of mutual value. Compromises on unrelated issues resulted in 55% of the smaller of the two trusts, the Janet Grace trust, being included in her gross estate.

Joseph Grace died in 1950. The federal estate tax return disclosed both trusts. The Joseph Grace trust was reported as a nontaxable transfer and the Janet Grace trust was reported as a trust under which decedent

held a limited power of appointment. Neither trust was included in decedent's gross estate.

The Commissioner determined that the Joseph and Janet Grace trusts were "reciprocal" and included the amount of the Janet Grace trust in decedent's gross estate. A deficiency in the amount of $363,500.97, plus interest, was assessed and paid.

## II.

Section 811 (c)(1)(B) of the Internal Revenue Code of 1939 provided that certain transferred property in which a decedent retained a life interest was to be included in his gross estate. The general purpose of the statute was to include in a decedent's gross estate transfers that are essentially testamentary—*i. e.,* transfers which leave the transferor a significant interest in or control over the property transferred during his lifetime. See *Commissioner* v. *Estate of Church,* 335 U. S. 632, 643–644 (1949).

The doctrine of reciprocal trusts was formulated in response to attempts to draft instruments which seemingly avoid the literal terms of § 811 (c)(1)(B), while still leaving the decedent the lifetime enjoyment of his property.[2] The doctrine dates from *Lehman* v. *Commissioner,* 109 F. 2d 99 (C. A. 2d Cir.), cert. denied, 310 U. S. 637 (1940). In *Lehman,* decedent and his brother owned equal shares in certain stocks and bonds. Each brother placed his interest in trust for the other's benefit for life, with remainder to the life tenant's issue. Each brother also gave the other the right to withdraw $150,000 of the principal. If the brothers had each reserved the right to withdraw $150,000 from the trust that each had created, the trusts would have been includible in their gross estates as interests of which each

---

[2] See Colgan & Molloy, Converse Trusts—The Rise And Fall Of A Tax Avoidance Device, 3 Tax L. Rev. 271 (1948).

had made a transfer with a power to revoke. When one of the brothers died, his estate argued that neither trust was includible because the decedent did not have a power over a trust which he had created.

The Second Circuit disagreed. That court ruled that the effect of the transfers was the same as if the decedent had transferred his stock in trust for himself, remainder to his issue, and had reserved the right to withdraw $150,000. The court reasoned:

> "The fact that the trusts were reciprocated or 'crossed' is a trifle, quite lacking in practical or legal significance. . . . The law searches out the reality and is not concerned with the form." 109 F. 2d, at 100.

The court ruled that the decisive point was that each brother caused the other to make a transfer by establishing his own trust.

The doctrine of reciprocal trusts has been applied numerous times since the *Lehman* decision.[3] It received congressional approval in § 6 of the Technical Changes Act of 1949, 63 Stat. 893.[4] The present case is, however, this Court's first examination of the doctrine.

The Court of Claims was divided over the requirements for application of the doctrine to the situation of this case. Relying on some language in *Lehman* and certain other courts of appeals' decisions,[5] the majority held that

---

[3] See, *e. g.*, *Glaser* v. *United States,* 306 F. 2d 57 (C. A. 7th Cir. 1962); *Estate of Moreno* v. *Commissioner,* 260 F. 2d 389 (C. A. 8th Cir. 1958); *Hanauer's Estate* v. *Commissioner,* 149 F. 2d 857 (C. A. 2d Cir.), cert. denied, 326 U. S. 770 (1945); *Cole's Estate* v. *Commissioner,* 140 F. 2d 636 (C. A. 8th Cir. 1944).

[4] See S. Rep. No. 831, 81st Cong., 1st Sess., 5–6 (1949); H. R. Rep. No. 920, 81st Cong., 1st Sess., 5 (1949).

[5] See *McLain* v. *Jarecki,* 232 F. 2d 211 (C. A. 7th Cir. 1956); *Newberry's Estate* v. *Commissioner,* 201 F. 2d 874 (C. A. 3d Cir. 1953); *In re Lueder's Estate,* 164 F. 2d 128 (C. A. 3d Cir. 1947).

the crucial factor was whether the decedent had established his trust as consideration for the establishment of the trust of which he was a beneficiary. The court ruled that decedent had not established his trust as a *quid pro quo* for the Janet Grace trust, and that Janet Grace had not established her trust in exchange for the Joseph Grace trust. Rather, the trusts were found to be part of an established pattern of family giving, with neither party desiring to obtain property from the other. Indeed, the court found that Janet Grace had created her trust because decedent requested that she do so. It therefore found the reciprocal trust doctrine inapplicable.

The court recognized that certain cases had established a slightly different test for reciprocity.[6] Those cases inferred consideration from the establishment of two similar trusts at about the same time. The court held that any inference of consideration was rebutted by the evidence in the case, particularly the lack of any evidence of an estate tax avoidance motive on the part of the Graces. In contrast, the dissent felt that the majority's approach placed entirely too much weight on subjective intent. Once it was established that the trusts were interrelated, the dissent felt that the subjective intent of the parties in establishing the trusts should become irrelevant. The relevant factor was whether the trusts created by the settlors placed each other in approximately the same objective economic position as they would have been in if each had created his own trust with himself, rather than the other, as life beneficiary.

We agree with the dissent that the approach of the Court of Claims majority places too much emphasis on the subjective intent of the parties in creating the trusts and for that reason hinders proper application of the federal estate tax laws. It is true that there is language

---

[6] *E. g., Orvis* v. *Higgins,* 180 F. 2d 537 (C. A. 2d Cir.), cert. denied, 340 U. S. 810 (1950).

in *Lehman* and other cases that would seem to support the majority's approach. It is also true that the results in some of those cases arguably support the decision below.[7] Nevertheless, we think that these cases are not in accord with this Court's prior decisions interpreting related provisions of the federal estate tax laws.

Emphasis on the subjective intent of the parties in creating the trusts, particularly when those parties are members of the same family unit, creates substantial obstacles to the proper application of the federal estate tax laws. As this Court said in *Estate of Spiegel* v. *Commissioner,* 335 U. S. 701, 705–706 (1949):

> "Any requirement . . . [of] a post-death attempt to probe the settlor's thoughts in regard to the transfer, would partially impair the effectiveness of . . . [section 811 (c)] as an instrument to frustrate estate tax evasions."

We agree that "the taxability of a trust corpus . . . does not hinge on a settlor's motives, but depends on the nature and operative effect of the trust transfer." *Id.,* at 705. See also *Commissioner* v. *Estate of Church, supra.*

We think these observations have particular weight when applied to the reciprocal trust situation. First, inquiries into subjective intent, especially in intrafamily transfers, are particularly perilous. The present case illustrates that it is, practically speaking, impossible to determine after the death of the parties what they had in mind in creating trusts over 30 years earlier. Second, there is a high probability that such a trust arrangement was indeed created for tax-avoidance purposes. And, even if there was no estate-tax-avoidance motive, the settlor in a very real and objective sense did retain an economic interest while purporting to give away his

---

[7] See cases cited in n. 5, *supra.*

property.[8] Finally, it is unrealistic to assume that the settlors of the trusts, usually members of one family unit, will have created their trusts as a bargained-for exchange for the other trust. "Consideration," in the traditional legal sense, simply does not normally enter into such intrafamily transfers.[9]

For these reasons, we hold that application of the reciprocal trust doctrine is not dependent upon a finding that each trust was created as a *quid pro quo* for the other. Such a "consideration" requirement necessarily involves a difficult inquiry into the subjective intent of the settlors. Nor do we think it necessary to prove the existence of a tax-avoidance motive. As we have said above, standards of this sort, which rely on subjective factors, are rarely workable under the federal estate tax laws. Rather, we hold that application of the reciprocal trust doctrine requires only that the trusts be interrelated, and that the arrangement, to the extent of mutual value, leaves the settlors in approximately the same economic position as they would have been in had they created trusts naming themselves as life beneficiaries.[10]

---

[8] For example, in the present case decedent ostensibly devised the trust plan to avoid an imminent federal gift tax. Instead of establishing trusts for the present benefit of his children, he chose an arrangement under which he and his wife retained present enjoyment of the property and under which the property would pass to their children without imposition of either estate or gift tax.

[9] The present case is probably typical in this regard. Janet Grace created her trust because decedent requested that she do so; it was in no real sense a bargained-for *quid pro quo* for his trust. See also *Hanauer's Estate* v. *Commissioner, supra,* n. 3.

[10] We do not mean to say that the existence of "consideration," in the traditional legal sense of a bargained-for exchange, can never be relevant. In certain cases, inquiries into the settlor's reasons for creating the trusts may be helpful in establishing the requisite link between the two trusts. We only hold that a finding of a bargained-for consideration is not necessary to establish reciprocity.

Applying this test to the present case, we think it clear that the value of the Janet Grace trust fund must be included in decedent's estate for federal estate tax purposes. It is undisputed that the two trusts are interrelated. They are substantially identical in terms and were created at approximately the same time. Indeed, they were part of a single transaction designed and carried out by decedent. It is also clear that the transfers in trust left each party, to the extent of mutual value, in the same objective economic position as before. Indeed, it appears, as would be expected in transfers between husband and wife, that the effective position of each party *vis-à-vis* the property did not change at all. It is no answer that the transferred properties were different in character. For purposes of the estate tax, we think that economic value is the only workable criterion. Joseph Grace's estate remained undiminished to the extent of the value of his wife's trust and the value of his estate must accordingly be increased by the value of that trust.

The judgment of the Court of Claims is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Mr. Justice Stewart took no part in the consideration or decision of this case.

Mr. Justice Douglas, dissenting.

The object of a reciprocal trust, as I understand it, is for each settlor to rid himself of all taxable power over the corpus by exchanging taxable powers with the other settlor. Yet Joseph P. Grace and his wife did not exchange taxable powers. Each retained a sufficient power over the corpus to require the inclusion of the corpus in his or her taxable estate. Each settlor, as one

of the three trustees, reserved the right to alter the trust by paying to the chief beneficiary "any amounts of the principal of the said trust, up to and including the whole thereof, which the said Trustees or a majority of them may at any time or from time to time deem advisable." I have quoted from Janet Grace's trust. But an almost identical provision is in the trust of Joseph P. Grace.

I would conclude from the existence of this reserved power* that the corpus of the Janet Grace trust was includible in her estate for purposes of the estate tax. *Lober* v. *United States,* 346 U. S. 335.

That is to say the use of a reciprocal trust device to aid the avoidance of an estate tax is simply not presented by this case.

I would dismiss the petition as improvidently granted.

---

*The relevant provision of the 1939 Internal Revenue Code (§ 811 (d) (2)) is practically identical with the corresponding provision of the 1954 Code (26 U. S. C. § 2038 (a) (2)). Each provides that a decedent's gross estate shall include property—

"To the extent of any interest therein of which the decedent has at any time made a transfer . . . where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power . . . by the decedent alone *or in conjunction with any person,* to alter, amend, or revoke . . . ." (Emphasis supplied.) The provisions of the Joseph and Janet Grace trusts would seem to satisfy that test, for only two out of the three trustees were necessary to alter the trust. See *Helvering* v. *City Bank Co.,* 296 U. S. 85.