ESTATE OF HERBERT LEVY, ILSE LEVY, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Levy v. Commissioner
Docket No. 5833-81.
United States Tax Court
T.C. Memo 1983-453; 1983 Tax Ct. Memo LEXIS 335; 46 T.C.M. (CCH) 910; T.C.M. (RIA) 83453; August 2, 1983. *335 Decedent and wife created trusts which had similar terms but under decedent's trust, wife had a special power of appointment over the trust corpus. Held, trusts are not interrelated and therefore not reciprocal within the meaning of United States v. Estate of Grace,395 U.S. 316 (1969); Estate of Bischoff v. Commissioner,69 T.C. 32 (1977); Krause v. Commissioner,57 T.C. 890 (1972). Donald A. Richards, for the petitioner. Richard J. Sapinski, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $4,492.84 in petitioner's Federal estate taxes. Due to concessions by petitioner, the sole issue remaining for decision is whether the value of a trust created by decedent's wife is includible in decedent's estate under section 2036. [1]
FINDINGS OF FACT This case was fully stipulated under Rule 122. [2] *336 The stipulation of facts and exhibits attached thereto are incorporated herein. For ease of discussion, we have set forth below the facts pertinent to our decision. Decedent, Herbert Levy, died in 1978. He was survived by his wife Ilse Levy, and their son, Lawrence Levy. Ilse Levy is the executrix of his estate and lived in New Jersey at the time the petition in this case was filed. Prior to decedent's death, he and his wife operated a retail shoe store under the name of Wel-Fit Shoes, Inc. (Wel-Fit), a New Jersey corporation which was formed in 1954. They were its sole shareholders until December 1973, when decedent transferred two and one-half shares to Lawrence Levy. On May 1, 1974, Ilse Levy also transferred two and one-half of her shares to Lawrence Levy. Prior to May 1974, decedent and Ilse Levy retained legal counsel for the purpose of creating inter vivos trusts and preparing their wills. On May 1, 1974, they each executed separate trust instruments, pursuant to which each transferred twelve and one-half shares of Wel-Fit stock to their respective trusts. The trust created by decedent shall be referred to as the Herbert Levy Trust, while the trust created by Ilse Levy shall be referred to as the Ilse Levy Trust. After the trusts *337 had been created, the stock of Wel-Fit was owned as follows: Shareholder
Number of Shares
Percentage
Herbert Levy
35
35.0%
Ilse Levy
35
35.0%
Herbert Levy Trust
12-1/2
12.5%
Ilse Levy Trust
12-1/2
12.5%
Lawrence Levy
5
5.0%
100
100.0% Ilse Levy was named as the trustee of the Herbert Levy Trust. Decedent was named as the trustee of the Ilse Levy Trust. Although each trust provided that the grantor thereof could appoint a co-trustee (other than himself or herself) to serve with the grantor's spouse as trustee, neither grantor appointed a co-trustee pursuant to this provision. Paragraph First (c) of the Herbert Levy Trust gave Ilse Levy, individually and not as trustee, a special power of appointment. This power entitled her to appoint the income or the corpus of the Herbert Levy Trust at any time during her lifetime and prior to Herbert Levy's death to any person or persons other than herself, her creditors, her estate, or the creditors of her estate. In particular, Paragraph First (c) provided: At any time, and from time to time, during her lifetime (prior to the death of the Grantor), the Grantor's wife, ILSE LEVY, shall have the exclusive power to appoint all or any part of the then remaining principal *338 of the [trust] to or for the benefit of any person or persons, other than herself, her creditors, her estate or the creditors of her estate, and in such portions or amounts, and upon such estates, whether in trust or otherwise, as the Grantor's said wife shall designate pursuant to an instrument in writing, acknowledged in the same manner as is then required to record deeds of real estate in the State of New Jersey, and in the event the Grantor's said wife shall appoint income, such appointment shall be for the life of the [trust] or such shorter period of time as the Grantor's said wife shall designate. The Ilse Levy Trust did not contain a similar provision for a power of appointment exercisable by Herbert Levy. In all other respects the trusts created by Ilse Levy and Herbert Levy were identical. OPINION Respondent contends that the value of the Ilse Levy Trust is includible in decedent's estate because the Ilse Levy Trust and the Herbert Levy Trust are interrelated and as such are reciprocal trusts within the meaning of United States v. Estate of Grace,395 U.S. 316 (1969). He asserts that because the trusts are reciprocal, they must be "uncrossed," and decedent must be treated *339 as the grantor of the Ilse Levy Trust. The result of this uncrossing, according to respondent, is the inclusion of the stipulated value of the Ilse Levy Trust in decedent's estate under section 2036. Petitioner contends that the trusts are not interrelated and hence no part of the Ilse Levy Trust is includible in the decedent's estate.
With respect to the Federal estate tax law, the term "reciprocal trusts" generally refers to a method of estate planning in use prior to the unification of the estate and gift taxes. With its use a taxpayer would attempt to remove property from his estate at favorable gift tax rates by placing such property in a trust in which he retained no interest. Concurrently, another party such as a spouse, relative or associate of the taxpayer would create a trust with terms substantially similar to those of the taxpayer's trust. Each of the two trusts created an interest in the grantor of the other trust, as a trustee or beneficiary, which would have been includible in his estate had he retained the interest for himself in his own trust. Thus, in effect, at the same time that the taxpayer relinquished control of his own property, he acquired a similar interest *340 in the property of another, and was left in the same economic position as if he had made a transfer of his own property in trust for himself. For several decades, the estate of a taxpayer who had created a reciprocal trust was required to include in his estate some or all of the value of the property transferred in trust. [3] However, the decisions frequently varied as to whether particular trusts were reciprocal and, if so, what rationale justified their taxation under estate tax laws.[4] *341 The conflict was resolved by the Supreme Court in United States v. Estate of Grace,395 U.S. 316 (1969). Estate of Grace held that where trusts were interrelated, and where they created approximately the same economic interests, the trusts were reciprocal and would be uncrossed. Specifically, the Supreme Court stated: [A]pplication of the reciprocal trust doctrine is not dependent upon a finding that each trust was created as a quidproquo for the other. * * * Nor do we think it necessary to prove the existence of a tax-avoidance motive. * * * Rather, we hold that application of the reciprocal trust doctrine requires only that the trusts be interrelated, and that the arrangement, to the extent of mutual value, leaves the settlors in approximately the same economic position as they would have been had they created trusts naming themselves as life beneficiaries. 395 U.S. at 324. Estate of Grace thus posed two questions, the first being whether or not the trusts are interrelated; and the second being whether or not the economic positions of the grantors have been altered by the creation of the trusts. If both tests are met, each grantor is deemed to be the grantor of the trust in which an interest was created for his benefit, and the value of that trust is includible in his estate to the extent of the value of the trust he created. See Estate of Bischoff v. Commissioner,69 T.C. 32 (1977); Krause v. Commissioner,57 T.C. 890 (1972), affd. 497 F.2d 1109 (6th Cir. 1974), *342 cert. denied 419 U.S. 1108 (1975). Since Estate of Grace, a number of factors have been examined in an attempt to determine whether trusts are interrelated. In Estate of Bischoff v. Commissioner,69 T.C. 32, 37-38 (1977), this Court focused on the creation of trusts at approximately the same time and with identical terms. See also Estate of Grace v. United States,supra; Krause v. Commissioner,supra at 900. In addition, in Krause we noted that the trusts had the same trustees, and that the primary beneficiaries "were the natural objects of the grantor's bounty." Similarly, in Exchange Bank & Trust Co. of Florida v. United States,694 F.2d 1261 (Fed. Cir. 1982), the appellate court concluded that trusts were interrelated which were created on the same date, involved an identical number of shares, and were apparently made pursuant to a prearranged plan. Thus, to determine whether the Herbert Levy Trust and Ilse Levy Trust are interrelated, we will consider their terms, corpus, trustees, and beneficiaries, as well as their date of creation and their relation, if any, to a prearranged plan. Respondent insists that the trusts are interrelated because: (1) they were created on the same *343 date pursuant to joint consultations with the same attorneys; (2) they each contained twelve and one-half shares of Wel-Fit; (3) Ilse Levy and Herbert Levy were each the trustee of the other's trust; and (4) the residuary beneficiary of both trusts was Lawrence Levy, the son of Herbert and Ilse Levy. Petitioner does not dispute these facts. He argues, however, that the trusts are not interrelated because their terms are not identical. In particular, he points out that the Herbert Levy Trust gave Ilse Levy a special power of appointment which permitted her to appoint the income and corpus of the trust created by Herbert Levy to anyone except herself, her estate, her creditors, and the creditors of her estate. The Ilse Levy trust did not confer a similar power of appointment upon Herbert Levy. Thus, petitioner asserts that the Herbert Levy Trust and the Ilse Levy Trust had very different legal consequences and were not interrelated for purposes of applying the reciprocal trust doctrine. We agree. During her life, and prior to the death of Herbert Levy, Ilse Levy could appoint the income and the corpus of the Herbert Levy Trust when and as she pleased except to herself, her creditors *344 or her estate. In contrast, Herbert Levy had no power of appointment over the income or the corpus of the Ilse Levy Trust. He was merely its trustee. As a result, decedent and his wife had markedly different interests in, and control over, the trusts created by each other. The reciprocal trust doctrine does not purport to reach transfers in trust which create different interests and which change "the effective position of each party visavis the [transferred] property * * *." United States v. Estate of Grace,supra at 325. Respondent agrees that, if valid, the special power of appointment in Ilse Levy prevents the two trusts from being interrelated. However, respondent argues that the provision creating the special power of appointment is invalid under New Jersey law. In the alternative, respondent contends that the provision is subjectively and objectively worthless. We will address these arguments in turn. First, respondent contends that under New Jersey law, the special power of appointment in favor of Ilse Levy fails because the provision creating the power does not specify a sufficiently definite class of beneficiaries. Respondent points out that when a trust provision *345 fails, the trust corpus covered by the provision passes according to alternate terms in the trust instrument. See Clapp, 6 N.J. Practice, Wills & Admin., sec. 536 (3d ed. 1962). He further observes that if the special power of appointment in the Herbert Levy Trust is deleted, the trust terms are identical to those of the Ilse Levy Trust. Accordingly, respondent maintains that the two trusts are inter-related because their terms are identical in substance, if not in form. Respondent cites three New Jersey cases in an attempt to demonstrate that the special power of appointment in Ilse Levy was void. In Lundie v. Walker,126 N.J.Eq. 497, 9 A.2d 783, 785 (Ch. 1939), the court found that a testamentary clause, which ordered the trustee to distribute the trust corpus to remaining relatives in a "wise, just and prudent" manner, was an enforceable, exclusive or special power of appointment, which the trustee could not exercise in favor of himself. In Condit v. Reynolds,66 N.J.L. 242, 49 A. 540, 542 (1901), the court was faced with what purported to be a testamentary trust in which the husband was to dispose of the wife's property in conformance with her lifetime charges and instructions. *346 The court refused to enforce the trust because the wife's oral instructions could not be proved under the Statute of Wills. Finally, in Brown v. Coxson,118 N.J.Eq. 114, 177 A. 551, 552 (Ch. 1935), affd. 119 N.J.Eq. 165, 181 A.2d 42 (1935), the court found that a testamentary trustee, who could appoint the trust principal "for whatever purpose he may deem it necessary," had to appoint the principal for charitable purposes and thus had a special power of appointment as opposed to a general power. These cases do not show that a special power of appointment to an indefinite class is invalid under New Jersey law. In fact, in Lundie and Brown, the courts of New Jersey specifically enforced such powers. In Condit the validity of the limited power was not considered because the court found that the power being oral could not be proved under the Statute of Wills. Consequently, we are unable to agree with respondent that Ilse Levy's special power of appointment was not legally enforceable in New Jersey. In fact it appears that when a New Jersey trustee is given a power to appoint to an indefinite class other than himself, the appointment is made in the discretion of the trustee. If *347 the trustee is willing to honor the power of appointment, the New Jersey courts will sustain his use of the power. Clapp, 6 N.J. Practice, Wills & Admin., sec. 536, n. 2 (1982 Pocket Supp.). Moreover, even if a disposition in trust fails because it is for an indefinite class of beneficiaries, the trustee may nonetheless exercise a power of appointment with respect to a disposition for the benefit of the class. Clapp, supra, sec. 536, n. 4 (3d ed. 1962). See also Restatement (Second) of Trusts, sec. 122 (1959). Respondent also argues that even if the provision of the Herbert Levy Trust which gave Ilse Levy a special power of appointment is valid, the provision is nonetheless mere surplusage. First, respondent asserts that the provision is subjectively worthless because Ilse Levy was not likely to exercise her power of appointment over the Wel-Fit shares to appoint to anyone other than her son. Second, respondent maintains that the provision is objectively worthless because the twelve and one-half shares of Wel-Fit comprised such a minority interest that even if Ilse Levy had appointed the shares, the person to whom she appointed them would have no influence over, or effect on, *348 the operation of the corporation. The subjective likelihood of Ilse Levy's exercising her power of appointment, whether due to her age, her love for her husband, or some other motive, is completely irrelevant. As stated in Estate of Grace:
Emphasis on the subjective intent of the parties in creating the trusts, particularly when those parties are members of the same family unit, creates substantial obstacles to the proper application of the federal estate tax laws. * * * '[T]he taxability of a trust corpus * * * does not hinge on a settlor's motives, but depends on the nature and operative effect of the trust transfer.' 395 U.S. at 323 (citing Estate of Spiegel v. Commissioner,335 U.S. 701, 705 (1949)). Thus, we will not delve into the subjective factors. Furthermore, we find that Ilse Levy's power of appointment had objective value which cannot be ignored. Ilse Levy's power to appoint twelve and one-half shares of Wel-Fit's stock from the trust, combined with her direct ownership of thirty-five of Wel-Fit's shares, enabled her to transfer 47.5% of its ownership to whomever she chose. Under New Jersey law, the shareholders of companies such as Wel-Fit, which were incorporated *349 prior to 1969, must approve major corporate changes by approval of at least two-thirds of the votes cast. Thus, the 47.5% interest which Ilse Levy held directly and indirectly in Wel-Fit was sufficient to block a merger, a consolidation, an amendment to the articles of incorporation, the sale of assets not in the regular course of business, and a dissolution of the company. See 14A N.J. Stat. Ann., Corporations, secs. 3-3, 5-21(5), 9-2(4)(c), 10-3(2), 10-11(1)(c), 12-4(4) (West 1969). As a result, her power of appointment was not objectively worthless. Accordingly, we do not need to consider whether the objective worthlessness of a power of appointment justifies ignoring it for purposes of the reciprocal trust doctrine. In sum, we conclude that the provision in the Herbert Levy Trust creating Isle Levy's special power of appointment was valid, the trusts are not interrelated, and consequently are not reciprocal. Estate of Grace,supra. Therefore, we need not consider petitioner's other contentions. To reflect concessions by petitioner made prior to trial, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended during the years in issue, unless otherwise provided.↩
2. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.
3. See Colgan & Molloy, Converse Trusts--The Rise And Fall Of A Tax Avoidance Device, 3 Tax L. Rev. 271 (1948); Note, United States v. Estate of Grace: The Reincarnation of the Reciprocal Trust Doctrine, 17 U.C.L.A. L. Rev. 436↩ (1969). 4. See, e.g., Glaser v. United States,306 F.2d 57 (7th Cir. 1962); Newberry's Estate v. Commissioner,201 F.2d 874 (3d Cir. 1953); Lehman v. Commissioner,109 F.2d 99 (2d Cir. 1940), cert. denied 310 U.S. 637↩ (1940).