T.C. Memo. 2012-48

UNITED STATES TAX COURT

ESTATE OF JOANNE HARRISON STONE, DECEASED, COSBY A. STONE AND MICHAEL D. STONE, PERSONAL REPRESENTATIVES, Petitioner <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23290-09.                  Filed February 22, 2012.

<u>Dudley W. Taylor</u>, for petitioner.

<u>Caroline R. Krivacka</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent determined a $2,563,290 Federal estate tax deficiency against the Estate of Joanne Stone (estate).  After settlement of certain issues, the sole issue remaining for decision is whether the value of real property transferred by Joanne Stone (decedent) to a family limited partnership should be included in the value of her gross estate pursuant to section 2036(a).[1]  We hold that the value of the property transferred should not be included.

## FINDINGS OF FACT

Decedent was a resident of Tennessee when she died on July 2, 2005, at the age of 81.  Two of her sons, Cosby A. Stone and Michael D. Stone, are the personal representatives of the estate.  Both reside in Tennessee.

1.  Background of Decedent, Her Family, and Her Land

Decedent was married to Roy A. Stone (Mr. Stone) and had six adult children and numerous grandchildren at the time of her death.  Decedent and her family members were a very close-knit family in terms of living close together and working

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

together. Decedent, Mr. Stone, and at least four of their six children had worked at a publishing company started by the Stone family in the 1930s.

The Stones were a prominent family in their hometown of Crossville, Tennessee (which is in Cumberland County), and had held significant amounts of real estate in the area for several generations. Decedent owned, either wholly or in part, approximately 30 parcels of real property in Cumberland County in 1997. Nine parcels of decedent's land (totaling approximately 740 acres) were mostly undeveloped woodlands without utilities or roads (woodland parcels). The woodland parcels were jointly owned by decedent and Mr. Stone.

In the early 1990s Steve Stone, one of decedent's sons, acquired real estate near the woodland parcels. Steve Stone built a home on his property and desired to form a lake in the area through the construction of a dam on his property. He discussed the lake project with decedent and Mr. Stone, as well as his siblings, and entered into an agreement with Crab Orchard Water Utility District (Crab Orchard) by which Crab Orchard would construct the dam at a cost of approximately $1.5 to $2 million. In exchange, Crab Orchard would be entitled to use a portion of Steve Stone's property for construction of a water treatment plant and would be able to

use the lake as a water reservoir for the county. Once the dam was completed in the mid-1990s, a portion of the woodland parcels fronted the newly formed lake.

Once the lake had been constructed, decedent and Mr. Stone concluded that they wanted the woodland parcels to become a family asset. They hoped that the family would one day be able to develop and sell homes near the lake, although there were long-term issues to be worked out. The first issue was that the shallow soil depth in the area makes it difficult to connect sewage systems to potential homes near the lake. The second issue is that the operations of Crab Orchard result in a significant drawdown of the water in the lake during the summer months. Potential solutions to these problems included construction of additional sewer lines closer to the lake and of a new primary reservoir for Cumberland County.[2]

2. <u>The Stone Family Limited Partnership of Cumberland County and Gifts of Partnership Interests</u>

To further their family planning regarding the woodland parcels, decedent and Mr. Stone sought the advice of their attorney, Joe Looney. Mr. Looney referred decedent and Mr. Stone to Harry Sabine, another attorney in the area. At their first

---

[2]Cosby Stone testified that there have been "grumblings" of new sewer lines to be constructed near the lake. In addition, the rapid population growth in Cumberland County could spur the construction of a new primary reservoir.

meeting with Mr. Sabine, decedent and Mr. Stone informed Mr. Sabine that they wanted to give gifts of real estate to various family members and were seeking the best way of doing so. Mr. Sabine discussed the use of a limited partnership and told decedent and Mr. Stone that it would simplify the gift-giving process by not requiring execution and recording of new deeds every year. Mr. Sabine also believed that using a limited partnership would help guard against partition suits, which could cause the land to be divided into smaller tracts.

Decedent and Mr. Stone decided to form a limited partnership to hold the woodland parcels. Mr. Sabine prepared the Stone Family Limited Partnership of Cumberland County (SFLP) agreement and helped decedent and Mr. Stone file a certificate of limited partnership with the Tennessee secretary of state on December 29, 1997. Decedent and Mr. Stone signed the SFLP agreement as both general and limited partners. A revised partnership agreement was executed December 31, 1997. This revised agreement made no material changes but allowed decedent's children, children's spouses, and grandchildren who received interests in the partnership to sign as limited partners. Decedent and Mr. Stone also signed the revised agreement as both general and limited partners.

The SFLP agreement provided that SFLP's purpose was to hold and manage property for the family members. The agreement provided that "The family

members desire to provide for the health, education, maintenance and welfare of each other and their children." The agreement listed various ways in which SFLP may be terminated, including by written agreement of partners owning 67% of SFLP or upon sale of all SFLP property and distribution of proceeds. The agreement placed various restrictions on a partner's ability to transfer their partnership interest and allowed SFLP to purchase the interest of any partner upon his or her death.

As general partners of SFLP, decedent and Mr. Stone had considerable powers, including the sole rights to: (1) determine whether properties would be sold; (2) manage the day-to-day business of SFLP; and (3) determine the amounts of any distributions to partners. The partnership agreement provided: "The limited partners will have the right to dismiss the general partner upon written agreement of those limited partners owning sixty-seven (67%) percent of percentage of ownership then held by all the limited partners." The partnership agreement also provided that upon the death, withdrawal, removal, or bankruptcy of a general partner a new general partner would be elected by the limited partners.

Upon its formation, decedent and Mr. Stone each obtained 1% general partnership interests and 49% limited partnership interests in SFLP. On December 30, 1997, decedent and Mr. Stone quitclaimed the woodland parcels to SFLP and

the parcels became SFLP's only assets. Before quitclaiming the woodland parcels to SFLP, decedent and Mr. Stone had the combined parcels appraised. Decedent and Mr. Stone used the appraisal value of $1,575,600 as the basis for all computations of SFLP interest values and did not discount the value of SFLP interests for gift tax purposes. Accordingly, decedent and Mr. Stone valued each 1% interest in SFLP at $15,756 for gift tax purposes.

On December 31, 1997, decedent and Mr. Stone gave portions of their limited interests in SFLP as gifts to their 21 children, children's spouses, and grandchildren. Each of the 21 recipients received a .634% limited partnership interest in SFLP from both decedent and Mr. Stone, so that the 21 recipients held a combined 26.628% limited partnership interest in SFLP at the end of 1997. Similar gifts were made in 1998 and 1999. In 2000 the recipients received only a .477% limited partnership interest from both decedent and Mr. Stone and two of the children's spouses no longer received interests as a result of divorce proceedings. As a result of the gifts, by the end of 2000 decedent and Mr. Stone each owned a 1% general partnership interest in SFLP and the children, children's spouses, and grandchildren owned the remaining 98% in limited partnership interests.

Xavier Ironside and Margaret Stone Ironside (one of decedent's daughters) began divorce proceedings in 1999. In an attempt to keep SFLP interests in family hands, SFLP and Mr. Ironside reached a deal whereby Mr. Ironside would receive approximately four acres of SFLP property on the lake. The decision to transfer the four acres was made by decedent and Mr. Stone, who had discussed it with various limited partners. In exchange for the four acres of lake property, on December 9, 1999, Mr. Ironside quitclaimed to Margaret Stone Ironside his interest in the woodland parcels still held by SFLP. No mention was made of the SFLP limited partnership interest then owned by Mr. Ironside in the quitclaim deed although it was mentioned that the parcels involved were the same ones conveyed to SFLP by decedent and Mr. Stone.

Patricia Connelly Stone and Michael Stone began divorce proceedings in 2000. As part of a financial settlement between them, Patricia Connelly Stone quitclaimed to Michael Stone her interest in the woodland parcels still held by SFLP on October 18, 2000. In exchange for the quitclaimed interest, Michael Stone gave up valuable consideration in the financial settlement. Again, no mention was made of the SFLP limited partnership interest then owned by Patricia Connelly Stone in the quitclaim deed, but it was mentioned that the parcels involved were the same ones conveyed to SFLP by decedent and Mr. Stone.

3. Additional Information

SFLP has yet to develop or otherwise improve the woodland parcels. SFLP initially had a bank account in its name but closed the account because SFLP earned no income, either from the property it held or otherwise. SFLP's only expenses were property taxes of approximately $700 per year due on the real property it held. Decedent and Mr. Stone paid these property taxes from their personal funds.

Documents labeled "Bill[s] of Sale" were used to transfer the SFLP limited partnership interests to decedent's children, children's spouses, and grandchildren. Although each document recites payment of $1.00 and other "good and valuable consideration", the recipients paid nothing to decedent and Mr. Smith and the transfers constituted gifts. Mr. Sabine testified that he used a bill of sale for each transfer because he thought it was the same thing as a document reflecting a gift of the SFLP interest.

Decedent and Mr. Stone made no particular use of the woodland parcels held by SFLP other than to fish and visit Steve Stone. Each of the limited partners had the same access to the land as decedent and Mr. Stone.

As of the time of trial in June 2011, Mr. Stone was age 95. Decedent taught Sunday school for 60 years, up to and including the last Sunday before she passed away.

The estate's estate tax return was filed September 26, 2006. An amended estate tax return was filed October 31, 2008. Respondent issued a notice of deficiency to the estate on August 27, 2009, in response to which the estate timely filed a petition for redetermination of the deficiency.

OPINION

I. Burden of Proof

Generally, taxpayers bear the burden of proving, by a preponderance of the evidence, that the determinations of the Commissioner in a notice of deficiency are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The estate has not argued that respondent should bear the burden of proof.

II. Whether Section 2036(a) Applies to Decedent's Transfer of the Woodland Parcels to SFLP

The purpose of section 2036 is to include in a deceased taxpayer's gross estate the value of inter vivos transfers that were testamentary in nature. United States v. Estate of Grace, 395 U.S. 316 (1969). Section 2036(a) generally provides that if a decedent makes an inter vivos transfer of property other than a bona fide

sale for adequate and full consideration and retains certain enumerated rights or interests in the property which are not relinquished until death, the full value of the transferred property will be included in the decedent's gross estate. Section 2036(a) is applicable when three conditions are met: (1) the decedent made an inter vivos transfer of property; (2) the decedent's transfer was not a bona fide sale for adequate and full consideration; and (3) the decedent retained an interest or right enumerated in section 2036(a)(1) or (2) or (b) in the transferred property which he or she did not relinquish before death.

Respondent argues that these three conditions were satisfied by decedent's transfer of the woodland parcels to SFLP, while the estate argues that the latter two conditions were not satisfied. The parties agree that decedent made an inter vivos transfer of property. We find that decedent's transfer of the woodland parcels to SFLP was a bona fide sale for adequate and full consideration. As a result, we conclude that section 2036(a) does not apply to decedent's transfer of the woodland parcels to SFLP.

A. Whether Decedent's Transfer of the Woodland Parcels to SFLP Was a Bona Fide Sale for Adequate and Full Consideration

In the context of family limited partnerships, the bona fide sale for adequate and full consideration exception is met where the record establishes the existence of

a legitimate and significant nontax reason for creating the family limited partnership and the transferors received partnership interests proportional to the value of the property transferred. Estate of Bongard v. Commissioner, 124 T.C. 95, 118 (2005). The objective evidence must indicate that the nontax reason was a significant factor that motivated the partnership's creation. Id. A significant purpose must be an actual motivation, not a theoretical justification. Id. A list of factors to be considered when deciding whether a nontax reason existed includes: (1) the taxpayer standing on both sides of the transaction; (2) the taxpayer's financial dependence on distributions from the partnership; (3) the partners' commingling of partnership funds with their own; (4) the taxpayer's actual failure to transfer the property to the partnership; (5) discounting the value of the partnership interests relative to the value of the property contributed; and (6) the taxpayer's old age or poor health when the partnership was formed. Id. at 118-119; Estate of Jorgensen v. Commissioner, T.C. Memo. 2009-66, aff'd, 431 Fed. Appx. 544 (9th Cir. 2011); Estate of Hurford v. Commissioner, T.C. Memo. 2008-278. We separate the bona fide sale exception into two prongs: (1) whether the transaction qualifies as a bona fide sale; and (2) whether the decedent received adequate and full consideration.

Estate of Bongard v. Commissioner, 124 T.C. at 119, 122-125; see also Estate of

Jorgensen v. Commissioner, T.C. Memo. 2009-66.

### 1. Whether Decedent's Transfer of the Woodland Parcels to SFLP Was a Bona Fide Sale

Whether a transfer is a bona fide sale is a question of motive. Estate of

Liljestrand v. Commissioner, T.C. Memo. 2011-259. We must separate the true

nontax reasons for SFLP's formation from those that merely clothe transfer tax

savings motives. See Estate of Bongard v. Commissioner, 124 T.C. at 121.

The estate argues that decedent had two nontax motives for transferring the

woodland parcels to SFLP: (1) to create a family asset which later may be

developed and sold by the family; and (2) to protect the woodland parcels from

division as a result of partition actions. Respondent argues that decedent was

motivated only by a desire to simplify the gift-giving process by not having to

execute deeds each time a gift of a portion of the woodland parcels was made. We

consider each of the parties' arguments.

### a. Gift Giving

One of the reasons decedent transferred the woodland parcels to SFLP was to

simplify the process of making gifts of the woodland parcels to her children, her

children's spouses, and her grandchildren. Respondent claims that gift giving was

decedent's only motive in transferring the woodland parcels to SFLP and that no nontax motive existed because "gift giving is considered a testamentary purpose and cannot be justified as a legitimate, non-tax business justification." Estate of Bigelow v. Commissioner, 503 F.3d 955, 972 (9th Cir. 2007), aff'g T.C. Memo. 2005-65. While we agree with respondent that gift giving alone is not an acceptable nontax motive, we disagree that gift giving was decedent's only motive in transferring the woodland parcels to SFLP.

### b. Creation of a Family Asset

Testimony at trial established that a significant purpose of decedent's transfer of the woodland parcels to SFLP was to create a family asset managed by decedent's family. Decedent and Mr. Stone desired that their children, their children's spouses, and their grandchildren work together to develop and sell homes near the lake. We have previously found that a desire by a decedent to have assets jointly managed by family members, even standing alone, is a sufficient nontax motive for purposes of section 2036(a). Estate of Mirowski v. Commissioner, T.C. Memo. 2008-74.

We find that decedent's desire to have the woodland parcels held and managed as a family asset constituted a legitimate nontax motive for her transfer of the woodland parcels to SFLP. Although this transfer to SFLP was also made with

testamentary purposes in mind, we have previously noted that "Legitimate nontax purposes are often inextricably interwoven with testamentary objectives." Estate of Bongard v. Commissioner, 124 T.C. at 121.

### c. Other Factors

Respondent argues that other facts show a nontax purpose did not actually exist. Respondent first argues that decedent stood on both sides of the transaction, as both transferor of the woodland parcels and general manager of SFLP. Respondent points out that decedent and Mr. Stone had almost complete control over the woodland parcels until 1999, when the limited partners acquired enough interest in SFLP (67%) to remove decedent and Mr. Stone as general partners.

Where a taxpayer stands on both sides of a transaction, we have concluded that there is no arm's-length bargaining and thus the bona fide transfer exception does not apply. Estate of Liljestrand v. Commissioner, T.C. Memo. 2011-259. However, we have also stated that an arm's-length transaction occurs when mutual legitimate and significant nontax reasons exist for the transaction and the transaction is carried out in a way in which unrelated parties to a business transaction would deal with each other. Estate of Bongard v. Commissioner, 124 T.C. at 123.

We have already found the existence of a legitimate nontax motive for the transaction between decedent and SFLP. See supra pp. 14-15. We also believe decedent received interests in SFLP proportional to the property she contributed. See Estate of Bongard v. Commissioner, 124 T.C. at 123. Therefore, this factor does not weigh against the estate.

Respondent next argues that the partners of SFLP failed to respect partnership formalities because: (1) in divorce proceedings, Mr. Ironside and Patricia Connelly Stone quitclaimed their interests in the woodland parcels to their former spouses but did not transfer actual SFLP interests; (2) some inadequate documentation was kept for the partnership, such as using bills of sale to make gifts of SFLP interests; and (3) decedent and Mr. Stone paid SFLP property taxes out of their personal funds. We agree with respondent that the partners of SFLP failed to respect some partnership formalities.

Other factors, however, support the estate's argument that a bona fide sale occurred. First, decedent and Mr. Stone did not depend on distributions from SFLP as no distributions were ever made. Second, decedent and Mr. Stone actually did transfer the woodland parcels to SFLP. Third, there was no commingling of partners' personal and partnership funds, as SFLP had no partnership funds. Fourth, no discounting of SFLP interests for gift tax purposes occurred; decedent and Mr.

Stone had the woodland parcels appraised and valued the SFLP interests so that the total value of SFLP interests was equal to the appraised value of the woodland parcels. Finally, the evidence presented tended to show that decedent (and Mr. Stone) were in good health at the time the transfer of the woodland parcels was made to SFLP. Although decedent was over age 70 at the time of transfer in 1997, she lived until 2005 and was healthy enough to continue teaching Sunday school up to and including the last Sunday before she passed away. Although Mr. Stone was over age 80 at the time of transfer, he was still alive at the time of trial in June 2011.

### d. Conclusion on Bona Fide Sale Issue

After considering all facts presented, we find that decedent had a legitimate and actual nontax motive in transferring the woodland parcels to SFLP. We therefore find that the bona fide sale prong is satisfied.

### 2. Whether Decedent Received Full and Adequate Consideration for Her Transfer of the Woodland Parcels to SFLP

A taxpayer's receipt of a partnership interest is not part of a bona fide sale for full and adequate consideration where an intrafamily transaction merely attempts to change the form in which the decedent holds property. Estate of Gore v. Commissioner, T.C. Memo. 2007-169. We have stated that--

> Without any change whatsoever in the underlying pool of assets or prospect for profit, as, for example, where others make contributions of property or services in the interest of true joint ownership or enterprise, there exists nothing but a circuitous "recycling" of value. We are satisfied that such instances of pure recycling do not rise to the level of a payment of consideration. To hold otherwise would open section 2036 to a myriad of abuses engendered by unilateral paper transformations.

Estate of Harper v. Commissioner, T.C. Memo. 2002-121. With regard to recycling of value, we have stated that when a "decedent employ[s] his capital to achieve a legitimate nontax purpose, the Court cannot conclude that he merely recycled his shareholdings." Estate of Schutt v. Commissioner, T.C. Memo. 2005-126.

We have already found that decedent had a legitimate and actual nontax purpose in transferring the woodland parcels to SFLP. See supra pp. 13-17. We therefore find that the transaction was not merely an attempt to change the form in which decedent held the woodland parcels and that the full and adequate consideration prong is satisfied.

B. Conclusion Regarding Section 2036(a)

We have found that decedent's transfer of the woodland parcels to SFLP was a bona fide transfer and that decedent received full and adequate consideration from SFLP as a result of the transfer. Because decedent's transfer was bona fide and for adequate and full consideration, section 2036(a) is inapplicable to the transfer and

does not operate to include the values of the woodland parcels in the value of decedent's gross estate.

In reaching our holding herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.