IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,050

In the Matter of the JILL PETRIE ST. CLAIR TRUST REFORMATION.

SYLLABUS BY THE COURT

1.

Appellate courts have de novo review of cases decided on the basis of documents and stipulated facts.

2.

K.S.A. 58a-415 permits reformation of a trust to conform the terms to the settlor's intention if proved by clear and convincing evidence that both the settlor's intent and the term of the trust were affected by a mistake of fact or law, whether in expression or inducement.

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed June 5, 2020. Affirmed.

*James M. Armstrong*, *Matthew W. Bish*, and *Daniel J. Buller*, of Foulston Siefkin, LLP, of Wichita, were on the brief for appellants Jill Petrie St. Clair and William J. Wallisch.

No appearance by appellees.

The opinion of the court was delivered by

1

MCANANY, J.: This is an appeal from an order reforming an inter vivos trust created and funded by Jill Petrie St. Clair. The trust was reformed by the district court in order for the trust to express Jill's true intentions which were not expressed in the original trust instrument due to an error by the scrivener. Jill and her trustee ask us to affirm the district court's rulings in order to satisfy the requirements of *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S. Ct. 1776, 18 L. Ed. 2d 886 (1967), which holds that in the absence of a decision by a state's highest court on a point of state law affecting federal estate taxation, federal authorities are not bound by the trial court decisions.

Upon our review, we conclude the district court's findings of fact are supported by clear and convincing evidence and the district court properly applied the law. Accordingly, we affirm.

FACTS

The facts before the district court established the following by clear and convincing evidence. In September 2003, Jill executed a trust agreement establishing the Jill Petrie St. Clair Trust. She named William J. Wallisch the trustee. The trust made her husband, William Paxson St. Clair, a life beneficiary of the trust's income. Upon William's death, the trust's income would then be distributed to Jill and William's children and grandchildren living at the time the trust was created, and the principal would eventually be distributed to the grandchildren or their estates.

In December 2002, before Jill created her trust, William established his own trust with an identical distribution scheme but naming Jill a life beneficiary of the trust's income. Both Jill and William funded their trusts in identical amounts when Jill executed her trust agreement.

2

M. Wayne Davidson was the attorney who prepared the trusts for Jill and William. One of the purposes of William's trust was to make sure the assets in his trust were not included in his or Jill's taxable estates. Davidson proposed to Jill that she create her own trust to obtain gift tax benefits and to similarly assure that the assets in her trust were not included in William's taxable estate. Davidson drafted Jill's trust with those objectives in mind. To that end, Jill's trust agreement provided that "no part of this Trust shall be included in the Grantor's gross estate for death tax purposes." At the time Jill executed the trust agreement, she believed it contained the necessary provisions for the trust assets to be excluded from her and William's taxable estates, and for the transfers to the trust to be considered completed gifts.

But because of a drafting error, Davidson failed to include two provisions necessary to differentiate the benefits provided to William under Jill's trust from the benefits provided to Jill under William's trust. These provisions were necessary to avoid the two trust being considered reciprocal, resulting in the assets of Jill's trust being included in William's estate upon his demise and vice versa. One of the provisions that was erroneously omitted from Jill's trust agreement would have enabled William to annually receive $5,000 or 5% of the assets in Jill's trust. The other provision would have given William a lifetime special power of appointment over the trust assets in Jill's trust that would have enabled him to appoint all or any portion of the assets in Jill's estate to any person other than himself, his creditors, his estate, or the creditors of his estate. These provisions are commonly used by attorneys drafting trusts to avoid creating reciprocal trusts.

Reciprocal trusts arise when two trusts are interrelated and the income beneficiaries in each trust have similar interests under the other's trust; that is, when the two trusts leave the settlors in approximately the same economic position as they would

3

have been in had they created trusts naming themselves as life beneficiaries. When this occurs, the corpus of the trust created by the other person may be included in the decedent's gross estate. See *United States v. Grace's Estate*, 395 U.S. 316, 324, 89 S. Ct. 1730, 23 L. Ed. 2d 332 (1969).

Because of Davidson's drafting error, Jill and William's trusts contain common distribution schemes, with each spouse's trust naming the other spouse as a life income beneficiary. As a result their trusts may be considered to be reciprocal. This outcome was contrary to Jill's intent when she executed the trust agreement. It was her intent that the assets of her trust would not be included in her or William's taxable estates, and that the transfers she made to her trust would be completed gifts for estate and gift tax purposes. She believed the trust agreement, at the time it was initially executed, included all the necessary provisions to achieve this outcome.

In order to correct this drafting error, Jill and Wallisch, her trust's trustee, petitioned the district court under K.S.A. 58a-415 for an order reforming Jill's trust, citing concerns that the trust as originally drafted would trigger the reciprocal trust doctrine and cause the assets in Jill's trust to be included in William's taxable estate upon his death. They attached to their petition a copy of Jill's trust agreement together with affidavits of Jill, Wallisch, and Davidson. Jill and Wallisch requested that the trust be reformed to include the two provisions described earlier, more specifically titled a "General Power of Grantor's Husband to Withdraw Portion of Principal" and a "Limited Special Power of Appointment." The specific language of the proposed "General Power of Grantor's Husband to Withdraw Portion of Principal" was as follows:

> "1-3.2 General Power of Grantor's Husband to Withdraw Portion of Principal.
> Notwithstanding the foregoing provisions, in any taxable year of the trust estate for

4

federal income tax purposes, Grantor's husband, William Paxson St. Clair, shall have a right of withdrawal from the principal of this Trust, on the last day of such year, of the greater of the sum of Five Thousand Dollars ($5,000.00) or five percent (5%) of the then market value of the principal of this Trust (not reduced by any income taxes chargeable to trust principal). Distribution shall be made within thirty (30) days after delivery to the Trustee of the written instrument of withdrawal (such delivery shall include delivery by mail, delivery service, hand delivery, email, or fax). Any commissions payable to the Trustee as a result of a withdrawal shall be charged to the property withdrawn. This right of withdrawal shall not be cumulative and shall be exercisable only (a) as to property held in the Trust and not by reference to property which the trust estate may receive from any source, including Grantor's estate, and (b) voluntarily by Grantor's husband, William Paxson St. Clair, and not by any guardian, conservator, attorney-in-fact, creditor or other person on his behalf. Notwithstanding the foregoing, Grantor's husband, William Paxson St. Clair, is specifically prohibited from exercising the foregoing right of withdrawal with regard to any policy of life insurance on his life and the value of the property for purposes of this Paragraph shall not include the value of any policy of life insurance on his life. The determination by the Trustee of the value of the property for purposes of this Paragraph shall be conclusive."

The proposed "Limited Special Power of Appointment" was as follows:

"1-3.4 Lifetime Special Power of Appointment. Grantor's husband, William Paxson St. Clair, shall have a lifetime limited power of appointment to appoint all or any portion of the trust estate in favor of any persons or entities other than himself, his creditors, his estate and the creditors of his estate, exercisable by written instrument, signed by Grantor's husband, William Paxson St. Clair, and acknowledged before a notary public, provided such instrument both specifically references this limited power of appointment and is delivered to the Trustee during William Paxson St. Clair's lifetime. Notwithstanding the foregoing, such lifetime limited power of appointment shall not apply to any asset, or at any time, in any manner, or with respect to any otherwise applicable appointee, to the extent that such power would cause such asset to be included

5

in William Paxson St. Clair's estate for federal estate tax purposes or in Grantor's estate for federal estate tax purposes or to the extent that such power would result in the generation-skipping transfer tax inclusion ratio of the Trust increasing from what the inclusion ratio would be in the absence of such lifetime limited power of appointment. While part of the exclusion provided in the foregoing sentence, for further clarity, Grantor's husband, William Paxson St. Clair, is specifically prohibited from exercising such lifetime limited power of appointment over any policy of insurance on his life."

The petition was served on all the trust's beneficiaries, including Jill and William's two minor grandchildren for whom a guardian ad litem was appointed. No party objected to the relief requested. The guardian ad litem filed an affidavit stating he had discussed the petition with the children, that the proposed reformation would not adversely affect their interests, and that he did not object on their behalf to the requested reformation.

After considering the matter, the district court ordered that the trust be reformed to add the two new provisions. In its findings of fact, the court stated:

"33. Due to the scrivener's error in omitting the Withdrawal Power and the Lifetime Special Power of Appointment, it is possible that the assets held in the Trust could be includible in the taxable estate of Grantor's Husband at his death and Grantor's gifts to the Trust may not be considered completed gifts. Such possible inclusion of the assets held in the Trust in the taxable estate of Grantor's Husband and Grantor's gifts to the Trust not being considered completed gifts are inconsistent with Grantor's particularized intent in creating the Trust.

"34. Grantor believed that the Trust Agreement included the necessary provisions to carry out her stated intent that the assets of the Trust not be includible in her taxable estate or Grantor's Husband's taxable estate. However, the Trust Agreement did not include the Withdrawal Power and the Lifetime Special Power of Appointment which were necessary to carry out her stated intent. As such, Grantor's intent and the terms of the

6

Trust Agreement were affected by a mistake of law or fact."

The district court concluded that

"as the evidence clearly and convincingly shows that both Grantor's intent and the terms of the Trust Agreement were affected by a mistake, this Court will reform the terms of the Trust Agreement to conform the terms to the Grantor's intention. Grantor's intent is not carried out by the present terms of the Trust Agreement because of the omission of the Withdrawal Power and the Lifetime Special Power of Appointment which should have been included in the Trust Agreement to eliminate the possibility that the assets of the Trust could be includible in [William's] taxable estate. In order to conform the terms of the Trust Agreement to Grantor's intent, the Trust Agreement must be reformed, as of September 19, 2003, to include the Withdrawal Power as 1-3.2 of Article 1-3 and the Lifetime Special Power of Appointment as Paragraph 1-3.4 of Article 1-3 of the Trust Agreement."

In order to satisfy the requirements of *Estate of Bosch*, Jill and Wallisch appealed, and in accordance with K.S.A. 2018 Supp. 20-3017 we granted their motion to transfer the appeal from the Court of Appeals to this court.

This matter is properly before us. In *In re Paul F. Suhr Trust*, No. 102,230, 2010 WL 198467, at *2 (Kan. 2010) (unpublished opinion), we held that this court had jurisdiction over an uncontested appeal from a favorable decision granting a trust modification despite lack of adverse parties, because our Declaratory Judgment Act provides courts with power to determine questions involving trust administration. See *In re Trust D of Darby,* 290 Kan. 785, 234 P.3d 793 (2010); *In re Harris Testamentary Trust*, 275 Kan. 946, 69 P.3d 1109 (2003); *In re Cohen*, No. 101,187, 2009 WL 862463, at *3 (Kan. 2009) (unpublished opinion); *In re Biggs Charitable Remainder Trust*, No. 92,594, 2005 WL 992007 (Kan. 2005) (unpublished opinion); *In re Fee Trust*, No.

92,928, 2005 WL 992319 (Kan. 2005) (unpublished opinion); *In re Estate of Simons*, No. 91,155, 2004 WL 737471 (Kan. 2004) (unpublished opinion); *In re Estate of Smith*, No. 89,691, 2003 WL 22938962 (Kan. 2003) (unpublished opinion).

ANALYSIS

Our standard of review is expressed in *In re Harris Testamentary Trust*:

"Appellate courts have de novo review of cases decided on the basis of documents and stipulated facts. See *Ward v. Ward*, 272 Kan. 12, 30 P.3d 1001 (2001). The question before this court is whether Kansas law supports the actions of the district court in its reformation of the Trust. We conclude that the appropriate standard of review is de novo which calls for an unlimited review by this court. See *Neeley v. Neeley*, 26 Kan. App. 2d 924, 996 P.2d 346 (2000)." *In re Harris Testamentary Trust*, 275 Kan. at 951.

Jill and Wallisch sought reformation of Jill's trust under K.S.A. 58a-415, which states:

"The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement."

The comments to the Uniform Trust Code provision from which K.S.A. 58a-415 was adapted explain:

"This section applies whether the mistake is one of expression or one of inducement. A mistake of expression occurs when the terms of the trust misstate the settlor's intention, fail to include a term that was intended to be included, or include a term that was not

8

intended to be included. . . . Mistakes of expression are frequently caused by scriveners' errors . . . . " Unif. Trust Code § 415, Comments.

In *In re Harris Testamentary Trust*, 275 Kan. at 957, this court approved the reformation of a testamentary trust under K.S.A. 58a-415 in order to shield the trust corpus from being included in the taxable estate of the settlor's son, the trustee, when the facts showed (1) the settlor intended to exclude the trust assets from his own and his heirs' estates, (2) the trust terms as drafted contained a mistake, and (3) the party seeking the reformation demonstrated a need under existing tax law for the proposed reforms.

The issue now before us is whether Jill and Wallisch demonstrated by clear and convincing evidence that Jill's intent in executing the trust instrument and in funding the trust, and the terms of the trust instrument itself, were both affected by a mistake of law or fact, making it necessary to reform the trust in order to conform to her true intent. See K.S.A. 58a-415. The record demonstrates that they have done so. The evidence is clear and convincing that the scrivener erred in excluding two provisions commonly inserted to avoid creating reciprocal inter vivos trusts as described in *Grace's Estate*. The result was a trust instrument which failed to achieve one of the basic objectives of the settlor; that is, to shield the trust assets from federal estate taxes. Moreover, the settlor was unaware of this defect when she executed the trust instrument and funded the trust. Thus, reformation is necessary so that the trust agreement correctly expresses the settlor's intent at the time she executed the instrument.

Absent these changes, application of the reciprocal trust doctrine could cause the assets of Jill's trust to be included in William's estate upon his death, or the assets of William's trust to be included in Jill's estate should she predecease her husband. All that is required for the reciprocal trust doctrine to apply is that "the trusts be interrelated, and

that the arrangement, to the extent of mutual value, leaves the settlors in approximately the same economic position as they would have been in had they created trusts naming themselves as life beneficiaries." *Grace's Estate*, 395 U.S. at 324. Here, Jill and William's trusts contained common distribution schemes, with each spouse's trust naming the other spouse as a life income beneficiary. The reformation of Jill's trust by allowing William to withdraw funds from Jill's trust annually and giving him a special power of appointment—provisions not contained in William's trust—destroys the economic symmetry of these two trusts. See *Estate of Levy v. Commissioner*, 46 T.C.M. (CCH) 910, 1983 WL 14435 (U.S. Tax Ct. 1983). Moreover, reformation is necessary for the trust to be consistent with Jill's original intent and to correct the scrivener's error in excluding these two trust provisions. The district court did not err in reforming Jill's trust.

Affirmed.

BEIER, J., not participating.
MICHAEL J. MALONE, District Judge Retired, assigned.[1]
PATRICK D. MCANANY, Senior Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** Retired District Judge Malone was appointed to hear case No. 120,050 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:** Senior Judge McAnany was appointed to hear case No. 120,050 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.